# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| CHINA PETROCHEMICAL DEVELOPMENT CORPORATION, individually and on behalf of PRAXAIR CHEMAX SEMICONDUCTORS MATERIALS COMPANY LIMITED<br><br>Plaintiff,<br><br>v.<br><br>PRAXAIR, INC., ANNE ROBY, JOHN PANIKAR, VERNON THAD EVANS, JOYCE CHEN, YU LING SHIEH, MEI LU, WILLIAM PEARCE, STEVE RIDDICK, JAMES WILLIAM SHAUGHNESSY, TOM SCHULTE, MARK JOSEPH MURPHY and STEVE ANGEL,<br><br>Defendants,<br><br>and<br><br>PRAXAIR CHEMAX SEMICONDUCTORS MATERIALS COMPANY LIMITED,<br><br>Nominal Defendant. | Civil Action No. 3:17-cv-2005-SRU<br><br>June 18, 2018<br><br>ORAL ARGUMENT REQUESTED |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STAY IN FAVOR OF ARBITRATION, OR, IN THE ALTERNATIVE, MOTION TO DISMISS THE AMENDED COMPLAINT

BRACEWELL LLP
1251 Avenue of the Americas
New York, New York  10020
(212) 508-6100

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................... iii

PRELIMINARY STATEMENT ......................................................................................... 1

STATEMENT OF FACTS ................................................................................................. 4

    I.      The Joint Venture Agreement ............................................................................... 4

    II.     PCSM's Silane Transactions ................................................................................. 5

    III.    The Taiwanese Actions, The Arbitration, And The Current Action ...................... 6

ARGUMENT ..................................................................................................................... 7

    I.      This Action Should Be Stayed In Favor Of Arbitration ....................................... 7

          A.     It Is Undisputed That A Valid Arbitration Agreement Exists ..................... 8

          B.     Arbitrability Should Be Decided By The Arbitrators ................................. 9

          C.     CPDC's Claims Fall Within The Scope Of The Arbitration Clause ......... 10

          D.     CPDC Cannot Avoid Arbitration Of Its Claims ....................................... 11

    II.     The Amended Complaint Should Be Dismissed In Its Entirety ........................... 13

          A.     This Action Should Be Dismissed Under *Forum Non Conveniens* .......... 14

               1.     CPDC's Choice Of Forum Is Not Entitled To Deference ............. 14

                    a.     Taiwan Is CPDC's Home Forum ...................................... 15

                    b.     CPDC Is Forum Shopping ................................................ 16

               2.     Taiwanese Courts Provide An Adequate Alternate Forum ........... 18

               3.     The Private And Public Interest Factors Support Dismissal .......... 18

                      a.     The Private Interest Factors Favor Taiwan ...................... 19

                    b.     The Public Interest Factors Favor Taiwan ....................... 19

           B.     Personal Jurisdiction Does Not Exist Over Six Individual Moving Defendants ........................................................................................... 21

               1.     CPDC Fails To Satisfy The Connecticut Long-Arm Statute ........ 22

                      a.     Plaintiff Has Not Pled Tortious Acts Committed In-State ................................................................................... 23

                    b.     Plaintiff Has Not Pled Any Injury In Connecticut ........... 23

                    c.     Plaintiff Misunderstands Computer Network Jurisdiction ....................................................................... 24

                2.     Exercising Personal Jurisdiction Does Not Comport With Due Process ..................................................................................... 25

C.    CPDC Fails To State A Civil RICO Claim ................................................ 26

    1.    CPDC's Civil RICO Claims Are Time Barred ............................. 27

    2.    CPDC Has Not Pled A Domestic Injury ........................................ 31

    3.    CPDC Fails To Allege A Distinct RICO Enterprise ..................... 33

    4.    The Amended Complaint Fails To Plead Predicate Acts, Fails to Plead With Particularity, And Fails To Plead A Pattern Of Racketeering Activity .................................................... 36

        a.    CPDC Fails To Sufficiently Plead Predicate Acts ............ 37

        b.    The Alleged Cover Up Acts Do Not Constitute Predicate Acts .................................................................... 39

        c.    CPDC Fails To Allege A Pattern And Continuity ............ 41

    5.    CPDC Cannot Establish Proximate Cause .................................... 42

    6.    CPDC's Claim For Conspiracy Under Civil RICO Necessarily Fails Absent A Valid Civil RICO Claim ................... 43

D.    CPDC's Remaining Causes Of Action Should Be Dismissed For Lack Of Supplemental Subject Matter Jurisdiction And Failure To State A Claim ........................................................................................ 44

    1.    CPDC Does Not State A Valid Breach Of Fiduciary Duty Claim ............................................................................................ 44

    2.    CPDC Fails To State Claims For Conversion, Civil Conspiracy To Commit Conversion, Or Aiding And Abetting Conversion .................................................................... 45

    3.    CPDC Fails To State A Claim Under Article 369-4 Of The Taiwan Companies Act .................................................................. 47

    4.    CPDC Fails To State A Claim Under Articles 184 And 185 Of The Taiwan Civil Code ............................................................ 48

CONCLUSION ..................................................................................................... 49

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abuhamdan v. Blyth, Inc.*,
    9 F. Supp. 3d 175 (D. Conn. 2014) ..................................................................26

*Ackerman v. Nw. Mut. Life Ins. Co.*,
    172 F.3d 467 (7th Cir. 1999) .........................................................................37

*Allen v. New World Coffee, Inc.*,
    No. 00-CV-2610, 2002 WL 432685 (S.D.N.Y. Mar. 19, 2002) ....................43

*Andreo v. Friedlander, Gaines, Cohen, Rosenthal & Rosenberg*,
    660 F. Supp. 1362 (D. Conn. 1987) ..............................................................43

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ......................................................................................26

*At The Airport v. ISATA, LLC*,
    438 F. Supp. 55 (E.D.N.Y. 2006) ............................................................34, 42

*Atuahene v. City of Hartford*,
    10 F. App'x 33 (2d Cir. 2001) .......................................................................44

*Bacarella Transp. Servs., Inc. v. J.M. Logistics, LLC*,
    No. 11-CV-00147, 2011 WL 4549400 (D. Conn. Sept. 29, 2011) ...............25

*Baisch v. Gallina*,
    346 F.3d 366 (2d Cir. 2003) ..........................................................................42

*Barsam v. Pure Tech Int'l, Inc.*,
    864 F. Supp. 1440 (S.D.N.Y. 1994), *vacated in aid of settlement*, 907 F. Supp.
    79 (S.D.N.Y. 1995) ..........................................................................29, 30, 40

*Bascuñan v. Elsaca*,
    874 F.3d 806 (2d Cir. 2017) ..........................................................................31

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................26, 48

*Bennett v. U.S. Trust Co.*,
    770 F.2d 308 (2d Cir. 1985) ..........................................................................34

*Bensadoun v. Jobe–Riat*,
    316 F.3d 171 (2d Cir. 2003) ..........................................................................12

*Bensmiller v. E.I. Dupont de Nemours & Co.*,
    47 F.3d 79 (2d Cir. 1995) ..............................................................................22

*BG Group, PLC v. Republic of Argentina*,
    134 S. Ct. 1198 (2014) ..................................................................................13

*Bigio v. Coca-Cola Co.*,
    675 F.3d 163 (2d Cir. 2012) ..........................................................................46

*Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris, Inc.*,
    113 F. Supp. 2d 345 (E.D.N.Y. 2000) ....................................................34

*Boyle v. United States*,
    556 U.S. 938 (2009) ..........................................................................36

*Brookhaven Town Conservative Comm. v. Walsh*,
    No. 14-CV-6097, 2016 WL 1171583 (E.D.N.Y. Mar. 23, 2016) ..........................3

*Butala v. Agashiwala*,
    916 F. Supp. 314 (S.D.N.Y. 1996) ......................................................27

*Campaniello Imports, Ltf. v. Saporiti Italia S.p.A.*,
    117 F.3d 655 (2d Cir. 1997)................................................................7

*Caro v. Fid. Brokerage Servs.*,
    No. 14-CV-01028, 2015 WL 1975463 (D. Conn. Apr. 30, 2015)........................23

*Carroll v. LeBoeuf, Lamb, Green & MacRae, L.L.P.*,
    392 F. Supp. 2d 621 (S.D.N.Y. 2005)..................................................45

*Casio Computer Co., Ltd. v. Sayo*,
    98CV3772, 2000 WL 1877516 (S.D.N.Y. Oct. 13, 2000) ..........................37, 39

*Chin-Ten Hsu v. New Mighty U.S. Trust*,
    288 F. Supp. 3d 272 (D.D.C. 2018)............................................16, 19, 21

*Choctaw Generation Ltd. P'ship v. Am. Home Assur. Co.*,
    271 F.3d 403 (2d Cir. 2001)................................................................8

*Cong. Constr. Co., Inc. v. Geer Woods, Inc.*,
    No. 05CV1665, 2005 WL 3657933 (D. Conn. Dec. 29, 2005) ..........................9

*Considine v. Brookdale Senior Living, Inc.*,
    124 F. Supp. 3d 83 (D. Conn. 2015)..................................................8, 9

*Cruz v. FXDirectDealer, LLC*,
    720 F.3d 115 (2d Cir. 2013)........................................................34, 35, 36

*Curtis & Assocs., P.C. v. Law Offices of David M. Bushman, Esq.*,
    758 F. Supp. 2d 153 (E.D.N.Y. 2010) ..................................................36

*D'Antuono v. Serv. Rd. Corp.*,
    789 F. Supp. 2d 308 (D. Conn. 2011)..................................................12

*Dalamagas v. Leonidas*,
    No. 16-cv-00638, 2017 WL 1086323 (D. Conn. Mar. 22, 2017) ........................45

*Dean Witter Reynolds, Inc. v. Byrd*,
    470 U.S. 213 (1985)........................................................................8

*DeFalco v. Bernas*,
244 F.3d 286 (2d Cir. 2001).............................................................................36

*Deleon v. Dollar Tree Stores, Inc.*,
No. 16-CV-00767, 2017 WL 396535 (D. Conn. Jan. 30, 2017)...........................11

*Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S.*,
9 F.3d 1060 (2d Cir. 1993).................................................................................7

*Dempsey v. Sanders*,
132 F. Supp. 2d 222 (S.D.N.Y. 2001)...............................................................41

*DeRosa v. Nat'l Envelope Corp.*,
595 F.3d 99 (2d Cir. 2010)................................................................................13

*Discon, Inc. v. NYNEX Corp.*,
93 F.3d 1055 (2d Cir. 1996).......................................................................35, 43

*Doe I v. State of Isr.*,
400 F. Supp. 2d 86 (D.D.C. 2005) .....................................................................44

*EA Indep. Franchisee Ass'n, LLC v. Edible Arrangements Int'l, Inc.*,
No. 10-CV-1489, 2012 WL 5878657 (D. Conn. Nov. 21, 2012) .......................7, 8

*Elsevier Inc. v. Pierre Grossman, IBIS Corp.*,
12 Civ. 5121, 2017 WL 5135992 (S.D.N.Y. Nov. 2, 2017) ................................32

*Eno Farms Co-Op. Ass'n, Inc. v. Corp. For Indep. Living*,
No. 06CV1983AHN, 2007 WL 3308016 (D. Conn. Nov. 5, 2007) .................27, 31

*Figueiredo Ferraz E Engenharia de Projeto Ltda. v. Republic of Peru*,
665 F.3d 384 (2d Cir. 2011)...............................................................................18

*FindTheBest.com, Inc. v. Lumen View Tech. LLC*,
20 F. Supp. 3d 451 (S.D.N.Y. 2014)..................................................................29

*Fink v. Magner*,
988 F. Supp. 70 (D. Conn. 1997).......................................................................46

*Flynn v. Nat'l Asset Mgmt. Agency*,
42 F. Supp. 3d 527 (S.D.N.Y. 2014).............................................14, 17, 18, 20

*Genesco, Inc. v. T. Kakiuchi & Co, Ltd.*,
815 F.2d 840 (2d Cir. 1987)........................................................................10, 11

*Glenwood Sys., LLC v. Med-Pro Ideal Solutions, Inc.*,
No. 090cv956, 2010 WL 11527383 (D. Conn. May 4, 2010) .........................21, 26

*Goodman v. Bremby*,
No. 3:16-cv-00665, 2017 WL 4169427 (D. Conn. Sept. 20, 2017).....................35

**Page(s)**

*Green Tree Fin. Corp.–Ala. v. Randolph*,
531 U.S. 79 (2000).......................................................................................8

*Greene v. Sha-Na-Na*,
637 F. Supp. 591 (D. Conn. 1986).............................................................23

*Greenwich Taxi, Inc. v. Uber Techs., Inc.*,
123 F. Supp. 3d 327 (D. Conn. 2015).......................................................38

*Gulf Oil Corp. v. Gilbert*,
330 U.S. 501 (1947)...................................................................................17

*H.J. Inc. v. Northwestern Bell Tel. Co.*,
492 U.S. 229 (1989)...................................................................................42

*Hecht v. Commerce Clearing House, Inc.*,
897 F.2d 21 (2d Cir. 1990)..................................................................30, 43

*Hoatson v. N.Y. Archdiocese*,
No. 05 CIV 10467, 2007 WL 431098 (S.D.N.Y. Feb. 8, 2007)...............37

*Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*,
62 F.3d 69 (2d Cir. 1995)............................................................................4

*Iragorri v. United Techs. Corp.*,
274 F.3d 65 (2d Cir. 2001)........................................................................17

*Katz v. Cellco P'ship*,
794 F.3d 341 (2d Cir. 2015)......................................................................10

*Kershaw v. Nautica S.A. Ltd.*,
885 F. Supp. 617 (S.D.N.Y. 1995) ...........................................................39

*Larobina v. McDonald*,
876 A.2d 522 (Conn. 2005) .......................................................................46

*Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*,
252 F.3d 218 (2d Cir. 2001)................................................................11, 13

*Lundy v. Catholic Health Sys. of Long Island Inc.*,
711 F.3d 106 (2d Cir. 2013)......................................................................40

*MacDermid, Inc. v. Deiter*,
702 F.3d 725 (2d Cir. 2012)................................................................21, 24

*Macomber v. Travelers Prop. & Cas. Corp.*,
840 A.2d 180 (Conn. 2002) .......................................................................45

*Manson v. Stacescu*,
11 F.3d 1127 (2d. Cir. 1993)......................................................................42

*Master-Halco, Inc. v. Scillia, Dowling & Natarelli, LLC*,
    739 F. Supp. 2d 104 (D. Conn. 2010) ................................................................46

*Mehler v. Terminix Int'l Co., L.P.*,
    205 F.3d 44 (2d Cir. 2000) ...............................................................................7

*Melgares v. Sikorsky Aircraft Corp.*,
    613 F. Supp. 2d 231 (D. Conn. 2009) ......................................14, 15, 16, 18, 19

*In re Merrill Lynch Ltd. P'ships Litig.*,
    154 F.3d 56 (2d Cir. 1998) ..............................................................27, 30, 44

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
    84 F.3d 560 (2d Cir. 1996) ...............................................................................21

*Mills v. Polar Molecular Corp.*,
    12 F.3d 1170 (2d Cir. 1993) .............................................................................38

*Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) .............................................................................................8

*Newman v. Jewish Agency for Israel*,
    No. 16-CV-7593, 2017 WL 6628616 (S.D.N.Y. Dec. 28, 2017) .........................32

*Nolen-Hoeksema v. Maquet Cardiopulmonary AG*,
    No. NNHCV146049888S, 2015 WL 9595132 (Conn. Super. Ct. Nov. 9, 2015).............24, 25

*Norex Petroleum Ltd. v. Access Indus., Inc.*,
    416 F.3d 146 (2d Cir. 2005) ..............................................14, 15, 16, 17, 18

*Nusbaum & Parrino, P.C. v. Collazo De Colon*,
    618 F. Supp. 2d 156 (D. Conn. 2009) ...........................................................21, 25

*Oriental Republic of Uruguay v. Chem. Overseas Holdings, Inc.*,
    Nos. 05 Civ. 6151, 05 Civ. 6154, 2006 WL 164967 (S.D.N.Y. Jan. 24, 2006) .............7, 9, 10

*Oriska Insurance Co. v. All Staffing, Inc.*,
    No. 09-CV-4024, 2010 WL 1028726 (S.D.N.Y. Mar. 11, 2010) ....................27, 30

*Peerless Importers, Inc. v. Wine, Liquor & Distillery Workers Union Local One*,
    903 F.2d 924 (2d Cir. 1990) .............................................................................11

*Philadelphia Reserve Supply Co. v. Nowalk & Associates, Inc.*,
    CIV. A. 91-0449, 1992 WL 210590 (E.D. Pa. Aug. 25, 1992) ............................40

*Plainville Elec. Prod. Co. v. Vulcan Adv. Mobile Power Sys., LLC*,
    638 F. Supp. 2d 245 (D. Conn. 2009) ...............................................................36

*Purjes v. Plausteiner*,
    15-CV-2515, 2016 WL 552959 (S.D.N.Y. Feb. 10, 2016) ....................................6

*Rio Tinto PLC v. Vale,*
    No. 14-CIV-3042, 2015 WL 7769534 (S.D.N.Y. Nov. 20, 2015) .........................................40

*Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.,*
    30 F.3d 339 (2d Cir. 1994)...........................................................................................34, 35, 36

*Roby v. Corp. of Lloyd's,*
    996 F.2d 1353 (2d Cir. 1993)...................................................................................................8

*Rogers v. Grimaldi,*
    875 F.2d 994 (2d Cir. 1989).....................................................................................................45

*Ross v. Bolton,*
    904 F.2d 819 (2d Cir. 1990).....................................................................................................37

*Rotella v. Wood,*
    528 U.S. 549 (2000)..................................................................................................................27

*Sandata Techs., Inc. v. CareWatch, Inc.,*
    No. 05CV1714, 2006 WL 1172195 (D. Conn. Apr. 20, 2006) ................................................10

*Sathianathan v. Smith Barney, Inc.,*
    No. 04 CIV. 7122, 2006 WL 538152 (S.D.N.Y. Feb. 24, 2006), *adopted in
    relevant part,* 2007 WL 576097 (S.D.N.Y. Feb. 21, 2007) .....................................................43

*Schmidt v. Fleet Bank,*
    16 F. Supp. 2d 340 (S.D.N.Y. 1998)..........................................................................................3

*Shaw Group Inc. v. Triplefine Int'l Corp.,*
    322 F.3d 115 (2d Cir. 2003)...................................................................................................7, 9

*Smith v. Local 819 I.B.T. Pension Plan,*
    291 F.3d 236 (2d Cir. 2002).........................................................................................26, 46, 48

*In re SmithKline Beecham Clinical Labs., Inc. Lab. Test Billing Practices Litig.,*
    108 F. Supp. 2d 84 (D. Conn. 1999) ..........................................................................................3

*Soroof Trading Dev. Co., Ltd. v. GE Fuel Cell Sys., LLC,*
    842 F. Supp. 2d 502 (S.D.N.Y. 2012).......................................................................................13

*Staehr v. Hartford Fin. Servs. Grp.,*
    547 F.3d 406 (2d Cir. 2008).....................................................................................................27

*Statek Corp. v. Courdert Bros. LLP,*
    No. 07-cv-00456, 2018 WL 834227 (D. Conn. Feb. 12, 2018)..................................23, 25, 26

*In re Sumitomo Copper Litig.,*
    995 F. Supp. 451 (S.D.N.Y. 1998) ...........................................................................................37

**Page(s)**

*Tavakoli-Azar v. Crescent Mgmt., Inc.*,
No. 97 Civ. 0696, 1999 WL 1052016 (S.D.N.Y. Nov. 19, 1999) ..........................................38

*Thyssen, Inc. v. Calypso Shipping Corp., S.A.*,
310 F.3d 102 (2d Cir. 2002)................................................................................................13

*In re Trilegiant Corp.*,
11 F. Supp. 3d 82 (D. Conn. 2014) ......................................................................................30

*United States v. Maze*,
414 U.S. 395 (1974).............................................................................................................40

*Vertrue Inc. v. Meshkin*,
429 F. Supp. 2d 479 (D. Conn. 2006)..................................................................................25

*W. Dermatology Consultants, P.C. v. VitalWorks, Inc.*,
153 A.3d 574 (Conn. 2016) .................................................................................................45

*Yanchukov v. Finskiy*,
No. 15-CV-8128, 2017 WL 3491965 (S.D.N.Y. Aug. 14, 2017)..............................31, 32, 33

**Statutes**

9 U.S.C. § 1..............................................................................................................................7

9 U.S.C. § 2..............................................................................................................................7

9 U.S.C. § 3..............................................................................................................................7

18 U.S.C. § 1961................................................................................................................34, 36

18 U.S.C. § 1962................................................................................................................26, 36

Conn. Gen. Stat. §§ 52-59b................................................................................................23, 24

**Rules**

Fed. R. Civ. P. 9(b) ...............................................................................3, 26, 31, 37, 38, 39

Fed. R. Civ. P. 12(b)(2)................................................................................................1, 14, 21

Fed. R. Civ. P. 12(b)(6).........................................................................................1, 12, 14, 26

Pursuant to § 3 of the Federal Arbitration Act ("FAA"), Moving Defendants respectfully submit this motion seeking a stay in favor of arbitration as there is a binding arbitration provision that governs this dispute.[1]

In the alternative, Moving Defendants respectfully submit this motion to dismiss the Amended Complaint on the following grounds:

- The doctrine of *forum non conveniens* requires that this case be heard in Taiwan, as the situs of the alleged injury and the majority of the parties and witnesses are located in Taiwan;

- Lack of personal jurisdiction over six of the Individual Defendants, pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure;

- Failure to state a claim upon which relief can be granted under the RICO statute and as to each of the other causes of action alleged, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure; and

- Lack of supplemental subject matter jurisdiction over the non-RICO claims.

## PRELIMINARY STATEMENT

This action is the latest in a multi-front litigation campaign by Plaintiff China Petrochemical Development Company ("CPDC") against Praxair over the management of Praxair Chemax Semiconductor Materials Company ("PCSM").  It is preceded by no less than twenty-seven civil and criminal cases before the Taiwanese courts, as well as an arbitration before the International Chamber of Commerce's International Court of Arbitration ("ICC"), based upon the same facts and transactions alleged in the Amended Complaint.  Having failed to succeed in Taiwan, CPDC has now turned to the United States court system in a transparent attempt to recast this standard commercial dispute as the work of a criminal enterprise and

---

[1] The Moving Defendants are Praxair, Inc. ("Praxair"), Dr. Anne Roby, John Panikar, Vernon Thad Evans, James William Shaughnessy, William Pearce, Stephen Riddick, Tom Schulte, Mark Joseph Murphy, and Stephen Angel (collectively, the "Individual Defendants").  Defendants Joyce Chen, Yu Ling Shieh, and Mei Lu and Nominal Defendant PCSM (defined below) have not been served, and therefore do not join in the motion at this time.

asserts meritless *in terrorem* civil RICO claims. However, neither the RICO claims nor the proverbial "kitchen sink" of state law and Taiwanese statutory claims have any legitimate basis, and the Amended Complaint should be rejected in its entirety.[2]

First, as to the request for a stay in favor of arbitration, there is a binding arbitration clause in the parties' joint venture agreement that controls. Recognizing the validity of the arbitration clause, CPDC commenced an arbitration against Praxair before the ICC in Taiwan in January 2017, which remains pending. CPDC now attempts to avoid the arbitration provision and suggests the Amended Complaint presents issues that are not arbitrable. However, a determination of whether CPDC's claims are within the scope of the arbitration clause is for the arbitrators to decide. Further, even if this Court were to determine arbitrability, the arbitration provision at issue is sufficiently broad in scope to require that CPDC's claims be arbitrated. Accordingly, the Amended Complaint should be stayed in favor of arbitration and Plaintiff must pursue its claims, if at all, before the ICC in accordance with the parties' agreement.

Second, under the doctrine of *forum non conveniens*, Plaintiff's claims would be more appropriately adjudicated in Taiwan. Plaintiff, as a foreign entity, is not entitled to deference in its selection of this forum. Further, myriad aspects of this case weigh in favor of dismissing the Amended Complaint on this ground, including the fact that CPDC and PCSM are Taiwanese entities, all the alleged harm occurred in Taiwan, many CPDC and third-party witnesses are located in Taiwan, multiple Defendants reside in Taiwan, there are Taiwanese statutory claims, and the parties' agreement has a Taiwanese choice-of-law provision.

---

[2] The inherent weakness of CPDC's claims is evident from the failure of CPDC to add meaningful factual allegations in the Amended Complaint. Although CPDC has dropped its fraudulent concealment claim – a cause of action not recognized in Connecticut – it otherwise has done little to address the numerous legal and factual deficiencies identified by Moving Defendants' original motion to stay or, in the alternative, dismiss.

Third, the Amended Complaint fails to adequately allege that this Court has personal jurisdiction over Defendants Evans, Shaughnessy, Pearce, Riddick, Schulte, or Murphy. None of these defendants reside in Connecticut, fall within the Connecticut long-arm statute, or have sufficient minimum contacts with Connecticut to satisfy due process considerations. The boilerplate conclusory allegations added to the Amended Complaint do not alter this result, or overcome the declarations of each of these Defendants submitted in connection with the original motion. Thus, the Amended Complaint should be dismissed as to these Defendants.

Fourth, as for the RICO counts, the Amended Complaint fails to state a claim for which relief can be granted. As with many civil RICO claims, CPDC's claims "miss the mark." *Brookhaven Town Conservative Comm. v. Walsh*, No. 14-CV-6097, 2016 WL 1171583, at *5 (E.D.N.Y. Mar. 23, 2016); *see also In re SmithKline Beecham Clinical Labs., Inc. Lab. Test Billing Practices Litig.*, 108 F. Supp. 2d 84, 93 (D. Conn. 1999) ("[C]ourts must always be on the lookout for the putative RICO case that is really 'nothing more than an ordinary fraud case clothed in the Emperor's trendy garb.'") (quoting *Schmidt v. Fleet Bank*, 16 F. Supp. 2d 340, 346 (S.D.N.Y. 1998)). Here, CPDC tries to dress-up conventional breach of contract claims as a racketeering conspiracy.

The RICO claims should be dismissed as (1) the claims are time barred – CPDC admits in the Amended Complaint that it became aware of the alleged injury more than four years before filing this action, and thus it is out of time under the applicable statute of limitations; (2) CPDC is unable to establish that it or PCSM sustained any "domestic injury"; (3) the Amended Complaint fails to allege an actionable RICO enterprise; (4) the Amended Complaint fails to properly plead the existence of predicate acts, and certainly not with the particularity required by Rule 9(b); (5) the Amended Complaint fails to allege a pattern of racketeering

activity; and (6) CPDC cannot meet the proximate cause requirement, as CPDC suffered no direct injury as a result of the alleged RICO actions. Additionally, as CPDC cannot state a claim based on a substantive RICO violation, its RICO conspiracy claim also fails.

Finally, because there is no federal question jurisdiction without the RICO claims, the Court should decline to exercise supplemental jurisdiction over the remaining state law and Taiwanese statutory claims. Moreover, each of those causes of action independently fails to state a claim upon which relief can be granted: (1) CPDC's claims for conversion, conspiracy, and aiding and abetting conversion fail because CPDC is unable to point to any property that was actually converted; and (2) CPDC's Taiwanese claims, including CPDC's derivative claim for breach of fiduciary duty, lack any well-pled factual allegations and consist of nothing more than reciting the elements of the Taiwanese statutes.

Accordingly, as more fully set forth below, the Court should issue a stay in favor of arbitration or, alternatively, dismiss the Amended Complaint in its entirety.

## STATEMENT OF FACTS

### I.     The Joint Venture Agreement

CPDC and Praxair entered into a Joint Venture Agreement, dated November 19, 1998 ("JV Agreement"), to form a Taiwanese entity – PCSM – to engage in the industrial gas business in Taiwan. *See* Am. Cmplt. ¶¶ 38, 42, 46; Wulfe Decl., Ex. 1 (JV Agreement) at § 1.2.[3]  In accordance with the terms of the JV Agreement, Praxair received a controlling 51% ownership interest in PCSM and, with it, the right to appoint the PCSM President, who would manage the day-to-day operations of PCSM, and nominate four of the seven members of PCSM's board of

---

[3] The Amended Complaint extensively relies upon the terms of the parties' joint venture agreement, and the Court therefore may consider that agreement on a motion to dismiss. *See Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995).

directors. *See* Am. Cmplt. ¶¶ 40 (third bullet), 43; Wulfe Decl., Ex. 1 (JV Agreement) at §§ 5.2, 5.6. CPDC took a minority 49% interest, which entitled it to nominate three members of the board and appoint one of those elected nominees Chairman. *See* Am. Cmplt. ¶¶ 40 (third bullet), 44; Wulfe Decl., Ex. 1 (JV Agreement) at § 5.2. Also, both Praxair and CPDC could each nominate one "supervisor," a role tasked with certain oversight responsibilities under Taiwanese law. *See* Am. Cmplt. ¶ 40 (fourth bullet); Wulfe Decl., Ex. 1 (JV Agreement) at § 5.4. The JV Agreement is governed by Taiwanese law. *See* Wulfe Decl., Ex. 1 (JV Agreement) at Art. 18.

The JV Agreement also contains an arbitration clause that requires the parties to arbitrate any "differences, disputes, claims or controversies arising out of or relating to any provisions of this Agreement or the breach thereof which may not be settled by mutual accord" before the ICC. Wulfe Decl., Ex. 1 (JV Agreement) § 19.1.

## II.     PCSM's Silane Transactions

PCSM began operations in February 1999, and has purchased, repackaged, and sold silane gas, among other products, since that time. *See* Am. Cmplt. ¶ 42. In order to ensure an adequate supply of silane gas for PCSM and other Praxair affiliates at prices reflective of Praxair's superior bargaining power and to obtain best market pricing from a reliable supplier acceptable to end users, Praxair entered into a contract with REC Advanced Silicon Materials LLC ("REC") in 2008. *See id.* ¶ 61. The REC agreement contained a take-or-pay clause, which obligated Praxair to pay for a minimum quantity of silane gas from REC at pre-set prices each year. *Id.* Praxair would then resell the silane to PCSM and other Praxair affiliates at the prices paid to REC. *Id.* ¶ 66.

According to the Amended Complaint, the details of the REC-Praxair-PCSM arrangement were disclosed to CPDC no later than at an August 27, 2012 meeting between CPDC and PCSM's President. *Id.* ¶¶ 74-76. CPDC further alleges that, immediately following

that meeting, CPDC began to investigate the nature of the REC-Praxair-PCSM arrangement and its impact on PCSM. *See id.* ¶¶ 77, 79, 85-102.

### III.     The Taiwanese Actions, The Arbitration, And The Current Action

Beginning in 2012, and over the following five years, CPDC, PCSM, and PCSM's officers, directors, and supervisors initiated at least 27 Taiwanese court actions related to the issues here. *See* Wulfe Decl., Ex. 2 (listing Taiwan court actions); Am. Cmplt. ¶¶ 91, 100.

On January 23, 2017, CPDC commenced arbitration against Praxair in Taiwan before the ICC in accordance with the arbitration provision in the JV Agreement. *See* Am. Cmplt. ¶ 145. CPDC's Request for Arbitration consisted of two claims: breach of the JV Agreement and violation of Article 369-4 of the Taiwan Company Act. *See* Wulfe Decl., Ex. 6 at ¶¶ 57, 59-60.[4] In the Terms of Reference, a document that sets the parameters of the arbitration, CPDC again included its breach and Article 369-4 claims, and added a claim under Article 28 of Taiwan's Civil Code. *Id.*, Ex. 3 at §§ 14.1.2, 14.1.3, 14.1.4. A four-day evidentiary hearing concluded on February 1, 2018, and post-hearing briefing was completed in April 2018. *Id.*, Ex. 4. The ICC arbitration is awaiting decision.

CPDC commenced the instant action on December 4, 2017, more than five years after CPDC alleges it learned of the REC-Praxair-PCSM arrangement that forms the basis of CPDC's ten-count Amended Complaint.[5] Further, as CPDC admits in its Amended Complaint, the events, transactions and occurrences alleged in the Amended Complaint are the same as those

---

[4] The Court may take judicial notice of CPDC's Request for Arbitration and the arbitration filings. *See Purjes v. Plausteiner*, 15-CV-2515, 2016 WL 552959, at *4 (S.D.N.Y. Feb. 10, 2016) (collecting cases and acknowledging judicial notice of arbitral filings, even where such materials are not mentioned in a complaint).

[5] The Amended Complaint skips over Count IX, resulting in a reference to "Count XI" despite there being only ten counts. *See* Am. Cmplt. ¶¶ 271-90.

upon which the ICC arbitration is based.  *See* Am. Cmplt. ¶ 145.  Indeed, a comparison of the

Amended Complaint and CPDC's Statement of Claims in the arbitration reveals the pleadings

not only overlap, but often contain verbatim allegations.[6]

Moving Defendants file this motion to stay or, alternatively, dismiss the Amended

Complaint for the reasons stated herein.

## ARGUMENT

### I.    This Action Should Be Stayed In Favor Of Arbitration

In light of the JV Agreement's binding arbitration clause, the FAA mandates that this

action be stayed pending arbitration of the claims asserted in the Amended Complaint.  Section 3

of the FAA entitles a party to a stay of any "suit or proceeding . . . brought . . . upon any issue

referable to arbitration under an agreement in writing for such arbitration."[7]  9 U.S.C. § 3.

When a party "raises the specter of arbitration," the Court is required to determine (1)

whether a valid agreement to arbitrate exists and (2) whether the scope of the arbitration clause

covers the asserted claims.  *Oriental Republic of Uruguay v. Chem. Overseas Holdings, Inc.*,

Nos. 05 Civ. 6151, 05 Civ. 6154, 2006 WL 164967, at *4 (S.D.N.Y. Jan. 24, 2006); *see also EA*

*Indep. Franchisee Ass'n, LLC v. Edible Arrangements Int'l, Inc.*, No. 10-CV-1489, 2012 WL

5878657, at *1 (D. Conn. Nov. 21, 2012) (citing *Mehler v. Terminix Int'l Co., L.P.*, 205 F.3d 44,

[6] *Compare* Am. Cmplt. ¶ 5, *with* Wulfe Decl., Ex. 5 ¶ 3; Am. Cmplt. ¶¶ 57-58, *with* Wulfe Decl., Ex. 5 ¶ 30; Am. Cmplt. ¶¶ 85-86, 88-89, *with* Wulfe Decl., Ex. 5 ¶¶ 51-54; Am. Cmplt. ¶¶ 95-98, *with* Wulfe Decl., Ex. 5 ¶¶ 60-63; Am. Cmplt. ¶¶ 119-21, *with* Wulfe Decl., Ex. 5 ¶¶ 76-78; Am. Cmplt. ¶ 131, *with* Wulfe Decl., Ex. 5 ¶ 80; Am. Cmplt. ¶ 138-39, *with* Wulfe Decl., Ex. 5 ¶ 98.

[7] The FAA applies because the JV Agreement affects interstate and international commerce.  *See* Am. Cmplt. ¶¶ 14, 43-44, 46, 61; 9 U.S.C. §§ 1, 2; *Shaw Group Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 120 (2d Cir. 2003).  The FAA's "liberal policy in favor of arbitration as a means to reduce the costliness and delays of litigation," *Campaniello Imports, Ltf. v. Saporiti Italia S.p.A.*, 117 F.3d 655, 665 (2d Cir. 1997) (citations and internal quotation marks omitted), "is even stronger in the context of international transactions," *Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S.*, 9 F.3d 1060, 1063 (2d Cir. 1993), like those at issue in this case.

47 (2d Cir. 2000)).  The FAA "leaves no place for the exercise of discretion by the district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217 (1985) (emphasis in original); *see also Considine v. Brookdale Senior Living, Inc.*, 124 F. Supp. 3d 83, 88 (D. Conn. 2015).  The party contesting arbitration bears the burden of demonstrating that the claims are unsuitable for arbitration.  *See Green Tree Fin. Corp.–Ala. v. Randolph*, 531 U.S. 79, 91-92 (2000).  Additionally, "'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'"  *EA Indep. Franchisee Ass'n*, 2012 WL 5878657, at *1 (quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 24-25 (1983)).

Here, there is no dispute that there is a valid and binding arbitration agreement.  Further, the parties clearly intended that any questions about whether the claims are subject to arbitration should be referred to ICC arbitrators.  Thus, the Court should stay this action pending arbitration, if any, of the claims.

### A.       It Is Undisputed That A Valid Arbitration Agreement Exists

The existence of a valid arbitration agreement is not in dispute as CPDC already commenced the ICC arbitration pursuant to that provision.  *See* Wulfe Decl., Ex. 6.  CPDC's agreement to arbitrate extends beyond Praxair to the Individual Defendants as well.  *See Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1360 (2d Cir. 1993) ("Courts in [the Second Circuit] and other circuits consistently have held that employees or disclosed agents of an entity that is a party to an arbitration agreement are protected by that agreement."); *see also Choctaw Generation Ltd. P'ship v. Am. Home Assur. Co*., 271 F.3d 403, 406 (2d Cir. 2001).

## B.     Arbitrability Should Be Decided By The Arbitrators

"[T]he question of who – the arbitrator or the Court – has the power to decide the threshold issue of arbitrability depends on what the parties have agreed about that particular matter." *Considine*, 124 F. Supp. 3d at 89-90. Here, the threshold question must be referred to the arbitrators as there is "clear and unmistakable evidence," in the form of both a broad arbitration clause and the adoption of the ICC rules, that the parties intended questions about the scope of the arbitration clause to be decided by the arbitrators.

The Second Circuit has concluded that broad language like that used in the JV Agreement's arbitration clause evidences the parties' intent to submit questions of arbitrability to the arbitrators.[8] *See Shaw Group*, 322 F.3d at 121, 124 (provision that parties would submit "[a]ll disputes . . . concerning or arising out of" the agreement to arbitration constituted a "broad grant of power to the arbitrators . . . evidenc[ing] the parties' clear inten[t] to arbitrate issues of arbitrability") (internal quotation marks omitted); *see also Oriental Republic*, 2006 WL 164967, at *6; *Cong. Constr. Co., Inc. v. Geer Woods, Inc.*, No. 05CV1665, 2005 WL 3657933, at *3-*4 (D. Conn. Dec. 29, 2005) (the broad language "any Claim arising out of or related to" the contract was "itself sufficient" to require referral of question of scope to arbitration).

The Second Circuit has also held that incorporation of the ICC rules, as the arbitration provision here does, constitutes clear and unmistakable evidence of the parties' intent to have arbitrators decide questions of scope.[9] *See Shaw Group*, 322 F.3d at 124-25 ("[B]ecause the

_____

[8] Article 19.1 of the JV Agreement states that, where "any differences, disputes or controversies" cannot be amicably resolved, then "any such differences, disputes, claims or controversies arising out of or relating to any provisions of this Agreement or the breach thereof . . . shall be finally settled by binding commercial arbitration." Wulfe Decl., Ex. 1, art. 19.1.

[9] Wulfe Decl., Ex. 1, § 19.1 (arbitration "shall take place . . . under the then existing rules and supervision of the International Chamber of Commerce Court of Arbitration").

parties' arbitration agreement . . . provides for arbitration to be conducted under the rules of the ICC, which assign the arbitrator initial responsibility to determine issues of arbitrability, we conclude that the agreement clearly and unmistakably evidences the parties' intent to arbitrate questions of arbitrability."); *see also Oriental Republic*, 2006 WL 164967, at *6 ("[T]he Agreement's express incorporation of the ICC Rules, together with the broad wording of the arbitration clause, provides clear and unmistakable evidence that the parties agreed to submit questions of arbitrability to arbitration.").

Therefore, because the issue of arbitrability must be resolved by the arbitrators, this action should be stayed pending arbitration of the claims brought by CPDC.[10]

### C.     CPDC's Claims Fall Within The Scope Of The Arbitration Clause

Even if the Court were to consider the threshold question of arbitrability instead of referring the question to arbitration, this action would nevertheless be subject to a stay because the claims arise under the JV Agreement.

"In determining whether a particular claim falls within the scope of the parties' arbitration agreement, [courts] focus on the factual allegations in the complaint rather than the legal causes of action asserted." *Genesco, Inc. v. T. Kakiuchi & Co, Ltd.*, 815 F.2d 840, 846 (2d Cir. 1987). "If the allegations underlying the claims 'touch matters' covered by the parties' [agreement], then those claims must be arbitrated, whatever the legal labels attached to them." *Id.*; *see also Sandata Techs., Inc. v. CareWatch, Inc.*, No. 05CV1714, 2006 WL 1172195, at *2 (D. Conn. Apr. 20, 2006) (concluding that patent infringement claims were subject to arbitration under license agreement). "When parties use expansive language in drafting an arbitration

---

[10] The Second Circuit has clarified that the FAA requires a stay pending arbitration, as opposed to dismissal of the claims, even if all claims involved in an action are arbitrable. *See Katz v. Cellco P'ship*, 794 F.3d 341, 346 (2d Cir. 2015).

clause, presumably they intend all issues that 'touch matters' within the main agreement to be arbitrated." *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 225 (2d Cir. 2001) (quoting *Genesco*, 815 F.2d at 846).

As noted above, the JV Agreement's arbitration clause is "a prototypical broad arbitration clause subjecting a wide array of claims to arbitration." *Deleon v. Dollar Tree Stores, Inc.*, No. 16-CV-00767, 2017 WL 396535, at *4 (D. Conn. Jan. 30, 2017). The Second Circuit has stated that broad arbitration clauses require arbitration "whenever a party has asserted a claim, however frivolous, that on its face is governed by the contract." *Peerless Importers, Inc. v. Wine, Liquor & Distillery Workers Union Local One*, 903 F.2d 924, 927 (2d Cir. 1990). Moreover, the factual allegations in the Amended Complaint undeniably "touch on" the JV Agreement, and the Amended Complaint affirmatively states that all the claims arise out of the JV Agreement. *See* Am. Cmplt. ¶ 145; *see also, e.g., id.* ¶¶ 1, 3, 5, 9. Indeed, as CPDC admits, the pending ICC arbitration is "[b]ased on much of the . . . events" alleged in the Amended Complaint. *Id.* ¶ 145.

Thus, if the Court were to decide the applicable scope of the JV Agreement's arbitration clause, this case would be subject to a mandatory stay under § 3 of the FAA pending arbitration of the claims brought in this action.

### D. CPDC Cannot Avoid Arbitration Of Its Claims

CPDC attempts to circumvent its obligation to arbitrate by alleging that, in the pending ICC arbitration, CPDC "determined to not actively pursue its non-contract based claims" in order to avoid "a protracted dispute as to the scope of the arbitral tribunal's jurisdiction" after Praxair purportedly argued "that the JV Agreement's arbitration clause is narrowly-tailored to cover only

11

contract-based claims." *Id.* ¶ 146. CPDC's allegation is factually inaccurate and legally

insufficient to serve as a basis to avoid arbitration.[11]

First, Praxair's alleged objection in the ICC arbitration related exclusively to CPDC's

claim under Article 369-4 of the Taiwan Company Act; CPDC's argument is irrelevant to the

other claims in the Amended Complaint. Thus, even if the Court were to credit CPDC's

position, CPDC's nine other claims would be subject to a stay, and the Court would not have

independent subject matter jurisdiction over the remaining Article 369-4 claim.

Second, Praxair raised a legal defense against CPDC's claim under Article 369-4 on the

ground that the claim fell "outside of the relationship under the JV Agreement . . . , *i.e.*, the

relationship between Praxair and CPDC."[12] Wulfe Decl., Ex. 14 at ¶¶ 49, 51; *see also id.*

(stating Article 369-4 claim was based on statute rather than a provision of the JV Agreement).

Praxair did not allege that all non-contract based claims were inarbitrable. And, CPDC's

*voluntary* decision not to pursue its claim in the arbitration, or allow the tribunal to determine its

jurisdiction over such claims, cannot be imputed to Praxair.

Third, as discussed above, under the JV Agreement, whether a claim is arbitrable is for

the arbitrators to decide. Thus, the question of whether any non-contract claims are outside the

scope of the arbitration clause should be referred to the arbitrators.

---

[11] The Court does not need to take CPDC's allegation as true in the context of a motion to stay in favor of arbitration because the summary judgment standard, not the Rule 12(b)(6) standard, applies to Moving Defendants' motion under the FAA. *See, e.g., D'Antuono v. Serv. Rd. Corp.*, 789 F. Supp. 2d 308, 319 (D. Conn. 2011) (citing *Bensadoun v. Jobe–Riat,* 316 F.3d 171, 175 (2d Cir. 2003)).

[12] Article 369-4 of the Taiwan Company Act authorizes a subsidiary company (PCSM) to recover from a controlling company (Praxair) if the controlling company "has caused a subsidiary company to conduct any business which is contrary to normal business practice or not profitable." *See* Am. Cmplt. ¶ 278 (reciting Art. 369-4). The statute authorizes a shareholder to invoke the statute on behalf of the subsidiary company, but any recovery inures to the benefit of the subsidiary company, not the shareholder. *See id.* (reciting Art. 369-4).

CPDC appears to be laying groundwork for either a judicial estoppel or waiver argument. Neither is applicable. "Judicial estoppel is inapposite where, as here, no final judgment was reached in the prior proceeding, the disputed representation was one of law rather than fact, and the court (or arbitration panel) never adopted the disputed representation in its decision-making process." *Soroof Trading Dev. Co., Ltd. v. GE Fuel Cell Sys., LLC*, 842 F. Supp. 2d 502, 518 (S.D.N.Y. 2012); *see also DeRosa v. Nat'l Envelope Corp.*, 595 F.3d 99, 103 (2d Cir. 2010) (requiring a "clearly inconsistent" "factual" – not legal – position for judicial estoppel to apply).

Waiver is equally unavailing. As CPDC admits, Praxair actively participated in the ICC arbitration, and it was CPDC's decision not to pursue its Article 369-4 claim in that proceeding. As the Second Circuit has stated, "waiver of the right to arbitration is not to be lightly inferred." *Thyssen, Inc. v. Calypso Shipping Corp., S.A.*, 310 F.3d 102, 104-05 (2d Cir. 2002) (citations omitted). And, "any doubts concerning whether there has been a waiver are to be resolved in favor of arbitration." *Louis Dreyfus*, 252 F.3d at 229 (internal quotation marks omitted).

Moreover, even the issue of waiver or estoppel must be decided by the arbitrators. *See BG Group, PLC v. Republic of Argentina*, 134 S. Ct. 1198, 1207 (2014) ("[C]ourts presume that the parties intend arbitrators, not courts, to decide disputes about the meaning and application of particular preconditions for the use of arbitration," such as "claims of waiver, delay, or a like defense to arbitrability.")

In light of the existence of a broad arbitration clause and the parties' clear and unmistakable intent that the ICC arbitrators decide the scope of arbitration provision, this Court should stay this action pending the arbitration, if any, of CPDC's claims.

## II. The Amended Complaint Should Be Dismissed In Its Entirety

In the alternative, the Amended Complaint should be dismissed. First, because Plaintiff's claims would be more properly heard and resolved in the courts of Taiwan, the Amended

Complaint should be dismissed under the doctrine of *forum non conveniens*. Second, as CPDC has failed to adequately allege that the Court has personal jurisdiction over Evans, Pearce, Riddick, Shaughnessy, Schulte, and Murphy, the Amended Complaint should be dismissed under Rule 12(b)(2) as to these Defendants. Third, CPDC's RICO claims should be dismissed under Rule 12(b)(6) for several reasons, including statute of limitations and failure to state a claim. Fourth, as CPDC's RICO claims are subject to dismissal, the Court should decline to exercise supplemental jurisdiction over the remaining state and Taiwanese law claims; moreover, those claims independently fail to state claims upon which relief can be granted.

### A.    This Action Should Be Dismissed Under *Forum Non Conveniens*

The allegations in the Amended Complaint would be more appropriately adjudicated in the courts of Taiwan, and thus, this case should be dismissed under the doctrine of *forum non conveniens*. There are three factors in the *forum non conveniens* analysis: (1) the degree of deference afforded the plaintiff's choice of forum, (2) the proposed alternative forum is adequate, and (3) the private and public interests implicated by the choice of forum. *See Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 153 (2d Cir. 2005). These factors are intended to help ascertain the relative convenience of the competing fora based on the totality of the circumstances. *See Melgares v. Sikorsky Aircraft Corp.*, 613 F. Supp. 2d 231, 236, 240-41 (D. Conn. 2009). Application of these factors demonstrates that Taiwanese courts clearly afford the more convenient and appropriate forum. *See Flynn v. Nat'l Asset Mgmt. Agency*, 42 F. Supp. 3d 527, 536 (S.D.N.Y. 2014) (dismissing civil RICO, conversion, and breach of fiduciary duty claims, among others, in favor of litigation in Ireland).

### 1.    CPDC's Choice Of Forum Is Not Entitled To Deference

Courts give deference to a plaintiff's choice of forum only where that court is the plaintiff's "home forum" or the plaintiff's "forum choice was likely motivated by genuine

convenience" rather than forum shopping. *Norex Petroleum*, 416 F.3d at 155. Neither is the case here.

### a. Taiwan Is CPDC's Home Forum

Taiwan is CDPC's home forum, not the District of Connecticut. CPDC is a Taiwanese corporation, maintains its principle place of business in Taiwan, and has no United States operations. *See* Am. Cmplt. ¶ 12. Thus, "from the outset, [CPDC's] forum choice is entitled to less deference." *Melgares*, 613 F. Supp. 2d at 241.

In order to remain in this Court, CPDC must have selected this forum on the basis of genuine convenience as determined by evaluating "[1] the convenience of the plaintiff's residence in relation to the chosen forum, [2] the availability of witnesses or evidence to the forum district, [3] the defendant's amenability to suit in the forum district, [4] the availability of appropriate legal assistance, and [5] other reasons relating to convenience or expense." *Norex*, 416 F.3d at 155 (alterations in original) (internal quotation marks omitted). Each of these factors weighs heavily in favor of proceeding in the courts of Taiwan.

First, Taiwan plainly is the more convenient forum for CPDC and PCSM. PCSM, the company at the center of the dispute and on whose behalf CPDC makes certain derivative claims, is also a Taiwanese corporation located and operating exclusively in Taiwan. Additionally, Taiwan is the center of the events alleged in the Amended Complaint. *See Melgares*, 613 F. Supp. 2d at 242 (locus of events in Spain).

Second, all of CPDC's documents are located in Taiwan, all of CPDC's witnesses reside in Taiwan, and a number of the Defendants reside in Taiwan or in other nearby Asian countries. *See id.* 242-43 (concluding convenience of accessing certain documents and witnesses in Connecticut did not outweigh "substantial inconvenience in the accessibility of evidence" located in Spain). Notably, this Court lacks jurisdiction to compel these foreign witnesses to

testify.  *See Chin-Ten Hsu v. New Mighty U.S. Trust*, 288 F. Supp. 3d 272, 289-90 (D.D.C. 2018) (noting issues with depositions in Taiwan and lack of compulsion power).  This is of particular concern here, where a significant number of the relevant witnesses are former CPDC employees, agents, or third parties over whom neither CPDC nor this Court have control.  Additionally, many of CPDC's and PCSM's documents are written in Chinese, and the CPDC and third-party witnesses may require English translation.  *See* Dkt. 42 at 8, 11.

Third, only four of the thirteen named Defendants are Connecticut citizens.  *See* Part II.B.1., *infra*.  Of the remaining nine, all of whom contest this Court's exercise of personal jurisdiction, five live in Asia, including three in Taiwan.  *See id.*; Dkt. 26.  Praxair has been a regular participant in the ICC arbitration and the numerous Taiwanese court actions arising out of the parties' ongoing dispute over the management of PCSM.

Fourth, while the parties have retained competent United States counsel to represent them in this action, they also have retained competent counsel in Taiwan to represent them in the ICC arbitration and numerous Taiwan court actions.

### b.      CPDC Is Forum Shopping

"'[W]hen [a] foreign plaintiff chooses a United States forum, a plausible likelihood exists that the selection was made for forum-shopping reasons, such as the perception that United States courts award higher damages than are common in other countries.'"  *Melgares*, 613 F. Supp. 2d at 245 (quoting *Norex*, 416 F.3d at 155).  Whether CPDC's motivation for selecting this forum is "indicative of forum shopping" or suggests that CPDC's selection of this forum is motivated by "'justice blended with some harassment'" requires considering "[1] attempts to win a tactical advantage resulting from local laws that favor the plaintiff's case, [2] the habitual generosity of juries in the United States or in the forum district, [3] the plaintiff's popularity or the defendant's unpopularity in the region, or [4] the inconvenience and expense to the defendant

resulting from litigation in that forum." *Norex*, 416 F.3d at 155 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947), and *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 72 (2d Cir. 2001)) (alterations original to *Norex*). These factors confirm that CPDC is forum shopping.

First, as noted above, the Amended Complaint asserts the same allegations that CPDC has already asserted in the ICC arbitration, which only awaits the arbitrators' final decision. *See* Am. Cmplt. ¶ 145. Rather than proceed solely in arbitration or in court in Taiwan, CPDC filed this additional action here in an attempt "to win a tactical advantage resulting from local laws." *Norex*, 416 F.3d at 155. Specifically, CPDC's action here is little more than an attempt to harness the treble damages provision of the RICO statute. That cause of action alone "suggests a desire to benefit from whatever *in terrorem* effect that statute has by virtue of the word 'racketeering' and the threat of treble damages." *Flynn*, 42 F. Supp. 3d at 536-37.

Second, the "habitual generosity" of United States juries is well known, and stands in stark contrast to the Taiwan civil law system, where judges hear and decide the factual and legal issues. Third, CPDC will not be prejudiced by proceeding in its home country of Taiwan. Indeed, while omitted from the Amended Complaint, CPDC admitted in its original Complaint that it "is one of the most reputable, professionally managed companies in Taiwan." Cmplt. ¶ 12.

Finally, the inconvenience and expense to many of the Moving Defendants of participating in litigation in Connecticut is apparent. *See Flynn*, 42 F. Supp. 3d at 537 (finding that plaintiff's choice of forum was entitled to little deference given "the obvious inconvenience and expense to all of these Irish defendants of litigating this case in New York, and the debatable convenience to the plaintiffs of doing so"). Also, as Praxair is a party in the ICC arbitration and

involved in a number of the Taiwan court actions, adding litigation in this forum imposes a greater, and unnecessary, inconvenience and expense.

### 2. Taiwanese Courts Provide An Adequate Alternate Forum

The Court also must assess whether the Taiwanese courts are "adequate to adjudicate the parties' dispute." *Norex*, 416 F.3d at 153. The Second Circuit has held that "[a]n alternate forum is adequate if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute." *Figueiredo Ferraz E Engenharia de Projeto Ltda. v. Republic of Peru*, 665 F.3d 384, 390 (2d Cir. 2011). Notably, the adequacy of an alternate forum does *not* "depend on the existence of the identical cause of action in the other forum, nor on identical remedies." *Norex*, 416 F.3d at 158 (internal quotation marks omitted). The *Norex* court emphasized that this "principle pertains *with particular force* to civil RICO actions because few foreign jurisdictions provide such an expansive civil vehicle for parties injured by ongoing criminal schemes; even more rare are foreign provisions for the recovery of treble damages." *Id.* at 158 (emphasis added); *see Flynn*, 42 F. Supp. 3d at 537-38 (finding that "the Irish courts are an adequate alternative forum" even though Irish law does not have a direct analogue to civil RICO).

It is clear from the face of the Amended Complaint that Taiwan's courts provide an adequate alternative forum: Counts I, X, and XI are predicated on Taiwanese law. *See* Am. Cmplt. ¶¶ 228-34, 277-90. Moreover, the parties already participated in 27 actions in Taiwanese courts based on allegations in the Amended Complaint and an arbitration under Taiwanese law.

### 3. The Private And Public Interest Factors Support Dismissal

The Court also must weigh the impact of certain private and public interest factors on the relative convenience of the fora. *See Melgares*, 613 F. Supp. 2d at 246 (citing *Gilbert*, 330 U.S. at 508-09). Here, these factors weigh heavily in favor of dismissal.

### a.      The Private Interest Factors Favor Taiwan

Under the private interest factors, the Court must assess (1) the ease of access to evidence; (2) the availability of compulsory process for the attendance of unwilling witnesses and cost of obtaining attendance of willing witnesses; (3) if relevant, the possibility of a view of premises; (4) the enforceability of a judgment if one is obtained; and (5) all other practical issues relevant to the ease, expeditiousness and expense of trial. *Id.*

As explained above, the locus of the events outlined in the Amended Complaint is Taiwan, and the majority of documents and witnesses are located in Taiwan, rendering Taiwan the more readily accessible forum for evidence. Further, many of the witnesses are not subject to compulsory process in this Court. *See Chin-Ten Hsu*, 288 F. Supp. 3d at 289-90. Even if they were, the high-cost and lengthy travel between Taiwan and Connecticut weighs in favor of dismissal. The third factor is not relevant here, and the fourth factor is neutral in light of the ability to enforce a United States judgment in Taiwan and vice-versa.

### b.      The Public Interest Factors Favor Taiwan

Under the public interest factors, the Court must assess "(1) administrative difficulties inherent in bringing a case in a congested docket; (2) imposing jury duty on citizens who have no relation to the litigation; (3) holding the trial in the view and reach of the citizens whom the trial might affect; (4) local interest in having localized controversies decided at home; and (5) avoiding requiring that a court in some other forum untangle problems in conflict of laws, and in law foreign to itself." *Melgares*, 613 F. Supp. 2d at 246.

First, the administrative difficulties associated with maintaining this case here include managing significant foreign and third-party discovery, disputes over possession, custody, and control, and compulsion to present evidence and witnesses in the United States.

Second, the need to impose jury duty on Connecticut citizens to resolve matters that took place in Taiwan in relation to a Taiwanese joint venture that allegedly damaged a Taiwanese company militates strongly in favor of dismissal. *See Flynn*, 42 F. Supp. 3d at 539 ("[T]his controversy has virtually nothing to do with New York, even granting [that] some of the 84 loans at issue were partly negotiated here. There is little reason to accept the possibility of imposing on New York jurors to decide this case if it were to go to trial.").

Third, any trial should be held in Taiwan because CPDC and PCSM are Taiwan entities operating in Taiwan, and 11 of the 13 named Defendants are or were PCSM employees or representatives.

Fourth, for the same reasons identified in the second and third factors, Connecticut has little "local interest" in having this controversy decided in Connecticut. Taiwan's interest in having this "localized controvers[y] decided at home" is much greater.

Fifth, CPDC's claims undoubtedly will require this Court to adjudicate "difficult problems in conflict of laws and the application of foreign law." The JV Agreement, which provides the basis for CPDC's claims, includes a Taiwanese choice-of-law provision. *See* Wulfe Decl., Ex. 1, art. 18. The Amended Complaint includes three Taiwanese statutory causes of action. *See* Am. Cmplt. ¶¶ 228-34 & n.2 (Count I), ¶¶ 277-84 (Count X), ¶¶ 285-90 (Count XI). In addition, the allegations in the Amended Complaint demonstrate that the Court will have to "untangle" Taiwanese law on various issues, including corporate governance, *see id.* ¶¶ 9, 112-13, 117-20, 125, not to mention the effect of numerous decisions of Taiwanese courts, *see id.* ¶¶ 100-05, 123, 189. While this Court is of course empowered to and capable of deciding issues of Taiwanese law, doing so presents obvious challenges that go beyond the mine run of cases.

*See Chin-Ten Hsu*, 288 F. Supp. 3d at 292. (conceding "some degree of difficulty" in applying Taiwanese law).

Based on the foregoing analysis, the totality of the circumstances weighs overwhelmingly in favor of dismissing the action under the doctrine of *forum non conveniens*.

### B. <u>Personal Jurisdiction Does Not Exist Over Six Individual Moving Defendants</u>

The Amended Complaint should be dismissed as to Evans, Shaughnessy, Pearce, Riddick, Schulte, and Murphy (collectively, for purposes of this section, the "Non-Resident Defendants") pursuant to Federal Rule of Civil Procedure 12(b)(2).[13] "[T]he plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996). However, "vague and conclusory allegations in a pleading are insufficient to establish personal jurisdiction." *Nusbaum & Parrino, P.C. v. Collazo De Colon*, 618 F. Supp. 2d 156, 160 (D. Conn. 2009). The Court may consider affidavits and other evidence submitted by the parties, and the allegations in the Amended Complaint are taken as true only "to the extent they are uncontroverted by the defendant's affidavits." *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012). Personal jurisdiction is determined based on the facts as they existed at the time CPDC filed its complaint. *See Glenwood Sys., LLC v. Med-Pro Ideal Solutions, Inc.*, No. 090cv956, 2010 WL 11527383, at *2 (D. Conn. May 4, 2010).

Although Plaintiff alleged that certain Non-Resident Defendants were citizens of Connecticut in the original Complaint, the Amended Complaint deletes those allegations in recognition that none of the Non-Resident Defendants are citizens of the State. *See* Wulfe Decl.,

---

[13] Although not yet served, it is worth noting that no personal jurisdiction will exist over Defendants Chen, Shieh, and Lu. The Amended Complaint does not contain a single allegation that would suggest a *prima facie* case of personal jurisdiction over these three foreign nationals.

Ex. 7 (Pearce domiciled in Texas), Ex. 8 (Riddick domiciled in Maryland), Ex. 9 (Shaughnessy domiciled in Shanghai), Ex. 10 (Schulte domiciled in New York), Ex. 11 (Murphy domiciled in North Carolina), Ex. 12 (Evans domiciled in Tokyo). Consequently, Plaintiff alleges that the exercise of personal jurisdiction over the Non-Resident Defendants is proper under Connecticut's long-arm statute because they purportedly "engaged in tortious acts within and centered in the State of Connecticut." Am. Cmplt. ¶ 36. However, Plaintiff offers no allegations in the Amended Complaint that the Non-Resident Defendants actually engaged in any tortious acts in the State or that caused injury in the State. Instead, Plaintiff simply alleges, in conclusory, boilerplate fashion that, "[u]pon information and belief," *each* Non-Resident Defendant

> has extensive ties to Connecticut as a result of his employment with Praxair, including but not limited to engaging in activities connected with the State of Connecticut, travel to/from the State of Connecticut, receipt of funds from Praxair, [sic] located within the State of Connecticut, sending and receiving e-mail and other electronic correspondence originating from and directed via Praxair servers located in Connecticut, and other activities with the relevant time period that lead to the reasonable expectation of being subject to the jurisdiction of the State.

Am. Cmplt. ¶¶ 20, 26-30. For the reasons stated below, these bald allegations are insufficient to establish personal jurisdiction.

### 1. CPDC Fails To Satisfy The Connecticut Long-Arm Statute

"Connecticut utilizes a familiar two-step analysis to determine if a court has personal jurisdiction. First, the court must determine if the state's long-arm statute reaches the [defendant]. Second, if the statute does reach the [defendant], then the court must decide whether that exercise of jurisdiction offends due process." *Bensmiller v. E.I. Dupont de Nemours & Co.*, 47 F.3d 79, 81 (2d Cir. 1995). That analysis reveals that Plaintiff has not, and cannot, validly assert personal jurisdiction exists over the Non-Resident Defendants.

Notably, CPDC does not cite any specific section of the Connecticut long-arm statute. The repeated, identical allegation provided in the Amended Complaint suggests that Plaintiff is alleging application of Conn. Gen. Stat. §§ 52-59b(a)(2) (tortious act committed within the state), (a)(3) (tortious act committed outside the state causing injury within the state), and (a)(5) (use of computer or computer network located in the state). *See* Am. Cmplt. ¶¶ 20, 26-30.

### a. Plaintiff Has Not Pled Tortious Acts Committed In-State

For purposes of § 52–59b(a)(2), the law requires Plaintiff's injury to have arisen from a tortious act committed by a defendant *within* Connecticut. *Caro v. Fid. Brokerage Servs.*, No. 14-CV-01028, 2015 WL 1975463, at *12 (D. Conn. Apr. 30, 2015) (dismissing for lack of personal jurisdiction where none of the three defendants committed any acts in Connecticut). The Amended Complaint does not contain a single non-conclusory allegation that any of the Non-Resident Defendants committed any act, let alone a tortious act, in Connecticut. Rather, CPDC suggests only that their alleged actions are "connected with" Connecticut. Am. Cmplt. ¶¶ 20, 26-30. Moreover, CPDC's unsupported, general allegation that the Non-Resident Defendants travelled to and from Connecticut is insufficient where there is no allegation of tortious conduct while physically present in Connecticut. *See Caro*, 2015 WL 1975463, at *12 (noting defendant must be physically present in the state when tort committed). Thus, long-arm jurisdiction under Conn. Gen. Stat. § 52-59b(a)(2) is not sufficiently pled.

### b. Plaintiff Has Not Pled Any Injury In Connecticut

The Amended Complaint also fails to allege any in-state injury. "[T]he threshold question under Section 52-59b(a)(3) is whether any injury to the plaintiff occurred in Connecticut." *See Greene v. Sha-Na-Na*, 637 F. Supp. 591, 597 (D. Conn. 1986). Courts generally apply the situs-of-injury, or critical events, test to determine whether a tortious act causes injury inside the state. *See Statek Corp. v. Courdert Bros. LLP*, No. 07-cv-00456, 2018

WL 834227, at *16 (D. Conn. Feb. 12, 2018) ("The location of a nonphysical pecuniary injury for jurisdictional purposes is . . . where the critical events associated with the dispute took place.") (internal quotation marks omitted).

Here, the Amended Complaint makes clear that any alleged injury occurred in Taiwan, and CPDC does not allege that any injury occurred in Connecticut. *See, e.g.*, Am. Cmplt. ¶¶ 5-6, 214 (summarizing actions and injury). Thus, Plaintiff cannot assert long-arm jurisdiction under Conn. Gen. Stat. § 52-59b(a)(3).

### c. Plaintiff Misunderstands Computer Network Jurisdiction

The Amended Complaint's vague allegation that each Non-Resident Defendant sent and received "e-mail and other electronic correspondent originating from and directed via Praxair servers located in Connecticut" is insufficient. Although Conn. Gen. Stat. § 52-59b(a)(5) added a new basis for long-arm jurisdiction associated with Connecticut-based computer and computer network use, it is not the catch-all category Plaintiff suggests. The Second Circuit made clear that this sub-section of the Connecticut long-arm statute could only apply "to torts committed by persons not in Connecticut based on conduct not covered by § 52–59b(a)(1), (2), or (3). This conclusion is reinforced by the fact that § 52–59b(a)(5) was enacted as part of a statutory scheme intended to prohibit unauthorized persons from using computers or networks with intent to, among other things, cause a computer to malfunction, alter or erase data, or copy computer data or programs." *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 729 (2d Cir. 2012); *Nolen-Hoeksema v. Maquet Cardiopulmonary AG*, No. NNHCV146049888S, 2015 WL 9595132, at *4, *6 (Conn. Super. Ct. Nov. 9, 2015) (noting that the cause of action must arise from the use, and that it is "not sufficient that the cause of action be interrelated with or affected by the listed activity"). The Amended Complaint does not contain any allegation of such computer-based torts, and therefore § 52–59b(a)(5) is not relevant to the question of personal jurisdiction.

Further, other than the general reference to sending and receiving e-mail and electronic documents, there are no factual allegations against any Non-Resident Defendant for use of a computer, with the exception of the allegations against Evans for allegedly sending emails through a Praxair server. Regardless, "[m]erely sending emails that are routed over a server located in Connecticut is likely not sufficient for personal jurisdiction under § 52–59b(a)(5)." *Nolen-Hoeksema*, 2015 WL 9595132, at *6 (citing *Bacarella Transp. Servs., Inc. v. J.M. Logistics, LLC*, No. 11-CV-00147, 2011 WL 4549400, at *4 (D. Conn. Sept. 29, 2011)).

## 2. Exercising Personal Jurisdiction Does Not Comport With Due Process

The claims against the Non-Resident Defendants must be dismissed for the additional reason that the exercise of personal jurisdiction over them would violate constitutional due process considerations, as these Defendants do not have "minimum contacts" with Connecticut.

In order for there to be sufficient minimum contacts, each Non-Resident Defendant must have done "some act by which [he] purposefully availed [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *See Statek*, 2018 WL 834227, at *18 (internal quotation marks omitted). The Amended Complaint fails to allege any contacts showing that the Non-Resident Defendants purposefully availed themselves of the laws of Connecticut. Plaintiff's vague allegations such as that the Non-Resident Defendants generally "engag[ed] in activities connected with the State of Connecticut," Am. Cmplt. ¶¶ 20, 26-30, are insufficient to meet their burden. *See Nusbaum & Parrino*, 618 F. Supp. 2d at 160.

Further, the exercise of personal jurisdiction does not comport with "traditional notions of fair play and substantial justice." *Vertrue Inc. v. Meshkin*, 429 F. Supp. 2d 479, 495 (D. Conn. 2006). Each of the factors considered in this analysis weighs against jurisdiction here, as (1) the exercise of jurisdiction would impose a heavy burden on the Non-Resident Defendants,

25

particularly those who reside in Asia; (2) for the reasons stated above, Connecticut does not have

a strong interest in adjudicating this case; (3) CPDC's agreement to arbitrate and the ongoing

arbitration in Taiwan, in addition to the myriad Taiwanese court actions, demonstrate that

Taiwan is a convenient forum for Plaintiff; (4) the most efficient resolution of Plaintiff's claims

is through arbitration or in the Taiwanese courts; and (5) there is nothing to suggest any

substantive social policy would warrant jurisdiction. *See Statek*, 2018 WL 834227, at \*20

(setting out factors); *Glenwood Sys.*, 2010 WL 11527383, at \*4.

Accordingly, the Court should dismiss this action as to the Non-Resident Defendants.

### C.    CPDC Fails To State A Civil RICO Claim

The Amended Complaint fails to state a claim under the RICO statute, 18 U.S.C. §

1962(c) and (d), for which relief can be granted, and CPDC's RICO claims should be dismissed

pursuant to Rule 12(b)(6).

To survive a motion to dismiss, a complaint must state a legally cognizable claim and

allege a plausible right to relief. *See Abuhamdan v. Blyth, Inc.*, 9 F. Supp. 3d 175, 187 (D. Conn.

2014). The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim

to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677 (2009) (quoting *Bell

Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In resolving a Rule 12(b)(6)motion, the Court

must accept as true all of the "well-pled" factual allegations contained in the complaint, but not

"conclusory allegations or legal conclusions masquerading as factual conclusions." *Smith v.

Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002). Even taking CPDC's well-

pled factual allegations as true, the Amended Complaint fails to state a claim for relief.

CPDC's civil RICO claims fail on numerous grounds, including statute of limitations,

lack of a "domestic injury," failure to plead a distinct RICO "enterprise," failure to plead

predicate acts, let alone with the particularity required by Rule 9(b), failure to allege a pattern of

racketeering activity, and failure to satisfy the proximate cause requirement. Accordingly, the Court should dismiss Plaintiff's civil RICO causes of action and, in the absence of any other basis for federal jurisdiction, dismiss the remaining causes of action.

### 1. CPDC's Civil RICO Claims Are Time Barred

The allegations in the Amended Complaint demonstrate that CPDC's RICO claims are time-barred. Civil RICO claims are subject to a four-year statute of limitations that begins to run when the plaintiff discovers or should have discovered the RICO injury. *Rotella v. Wood*, 528 U.S. 549, 552, 554 (2000); *see also In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 58 (2d Cir. 1998).

Injury can be discovered through actual or inquiry notice; "[i]nquiry notice is notice such that a reasonable [person] of ordinary intelligence would have discovered the existence of the fraud." *Merrill Lynch Ltd.*, 154 F.3d at 60 (internal quotation marks omitted). "[T]he test is an objective one and dismissal is appropriate when the facts from which knowledge may be imputed are clear from the pleadings." *Eno Farms Co-Op. Ass'n, Inc. v. Corp. For Indep. Living*, No. 06CV1983AHN, 2007 WL 3308016, at *5 (D. Conn. Nov. 5, 2007) (internal quotation marks omitted). The information triggering notice "need not detail every aspect of the alleged fraudulent scheme." *Staehr v. Hartford Fin. Servs. Grp.*, 547 F.3d 406, 427 (2d Cir. 2008). The statute of limitations "begins to run upon 'discovery of the injury, not discovery of the other elements of a claim.'" *Oriska Insurance Co. v. All Staffing, Inc.*, No. 09-CV-4024, 2010 WL 1028726, at*1 (S.D.N.Y. Mar. 11, 2010) (quoting *Rotella*, 528 U.S. at 555).

The Amended Complaint definitively demonstrates that CPDC had actual notice of its alleged RICO injury no later than August 27, 2012. Thus, the December 4, 2017 filing of the Complaint – more than five years later – is well past the applicable statute of limitations, and the RICO causes of action should be dismissed as out of time. *See Butala v. Agashiwala*, 916 F.

Supp. 314, 318 (S.D.N.Y. 1996) (dismissing civil RICO claim where complaint left "no doubt that the plaintiffs were on notice of the general fraudulent scheme" five years prior to filing).

More specifically, the Amended Complaint asserts that during an August 27, 2012 meeting with "CPDC's nominees to the JV Board of Directors" and the CPDC-appointed Supervisor, "Praxair's nominee as the JV Company's President, Defendant Joyce Chen, informed CPDC" about the REC-Praxair-PCSM arrangement, the "Purported Praxair-JV Company Supply Agreement," and that Praxair had been selling silane to PCSM at the prices set forth in the REC contract. Am. Cmplt. ¶ 74.

Further, CPDC alleges that at the same August 27, 2012 meeting, Chen "informed CPDC" that because the "market price of silane had imploded," and the JV Company "was obligated to purchase" silane from Praxair at a price "much higher than the market price," "Praxair and the JV Company projected that the JV Company would suffer substantial losses." *Id.* ¶ 75. The Amended Complaint then alleges that, at the same meeting, Chen "demanded that CPDC retroactively ratify any and all losses (whether realized or projected) stemming from the Purported Praxair-JV Company Supply Agreement." *Id.* ¶ 76.

CPDC allegedly "refused [to ratify the losses] and requested a reasonable investigation into the silane transactions." *See id.* ¶ 77. Indeed, according to the Amended Complaint, CPDC sent at least three letters to the JV Company in 2012 asking for detailed information, received certain documents, hired KPMG to conduct an audit – which included interviews of JV Company personnel on November 29, 2012 – and even commenced a proceeding in Taiwan to

compel PCSM to turn over documents related to the "REC silane." *Id*. ¶¶ 86-87, 91, 93, 97-98, 106.[14]

Thus, by August 27, 2012, CPDC was not only actually aware of the alleged RICO injury, but also clearly on inquiry notice, such that the statute of limitations had started to run. Moreover, as CPDC was aware no later than August 27, 2012 of the nature of the alleged scheme, any alleged fraud after this date is implausible. Indeed, after August 2012, CPDC could not have reasonably relied on any alleged misrepresentations regarding Praxair's sale of silane to PCSM. *See FindTheBest.com, Inc. v. Lumen View Tech. LLC*, 20 F. Supp. 3d 451, 459 (S.D.N.Y. 2014) (RICO predicate acts of mail and wire fraud requires establishing reliance).

CPDC's allegations of post- August 2012 predicate acts that were part of "a massive conspiracy to cover up" the silane transactions cannot save its claim. Am. Cmplt. ¶ 79; *see id.* Part III (¶¶ 79-143), ¶¶ 173-81, 187-91, 196-98. The law is clear that "efforts at covering up the initial fraudulent act" are not themselves fraudulent predicate acts. *Barsam v. Pure Tech Int'l, Inc.*, 864 F. Supp. 1440, 1450 (S.D.N.Y. 1994), *vacated in aid of settlement*, 907 F. Supp. 79 (S.D.N.Y. 1995).

In the Amended Complaint, CPDC adds the conclusory allegation that "[t]hese actions were not solely attempts to cover up the initial fraudulent acts . . . , but also undertaken in order to facilitate continuation of the fraud to the detriment of the JV Company and CPDC." Am. Cmplt. ¶¶ 182, 191, 199. However, that generic allegation is insufficient to overcome the statute of limitations, and fails to offer an explanation for how the RICO defendants could have continued to perpetrate a fraudulent scheme after disclosing the means by which the alleged

---

[14] At least seven related civil actions were commenced in Taiwan more than four years before this case was filed. Wulfe Decl., Ex. 2.

fraud was accomplished. Moreover, many of the alleged "cover-up" acts and injuries occurred

and were discovered more than four years before the Complaint was filed. *See, e.g.*, *id.* ¶¶ 177-

80, 197-98. Regardless, the alleged subsequent predicate acts do not start a new accrual period:

"[i]n the Second Circuit, an ongoing or additional injury does not trigger the accrual of a new

RICO claim, unless that injury is new and independent from the original injury." *Oriska Ins.*

*Co.*, 2010 WL 1028726, at *1 (internal quotation marks omitted). Where, as here, injuries "arose

from the same ongoing scheme," the injuries are not new or independent and cannot defeat a

time bar. *Id.* at *2 (citing *Merrill Lynch Ltd.*, 154 F.3d at 59-60); *see also In re Trilegiant Corp.*,

11 F. Supp. 3d 82, 105 (D. Conn. 2014) (recurring charges were not new and independent

injuries where the charges were incurred as part of the same underlying scheme).[15]

     CPDC's attempt to excuse its untimely filing by alleging equitable tolling and fraudulent

concealment, *see* Am. Cmplt. ¶ 227, is unavailing because Plaintiff concedes that it was aware of

its injury by August 2012. Thus, the allegation that Defendants concealed information after this

date "so that CPDC [would] be unable to ever investigate the full extent of Defendants'

wrongdoing," *id.* ¶ 82, is irrelevant. As noted above, CPDC only needed to be on actual or

inquiry notice of its injury to trigger the statute of limitations; it need not be aware of every

aspect of the alleged fraudulent scheme. Thus, alleged concealment of additional facts provides

---

[15] CPDC is likely to argue that its claims regarding the "Conflicted Financing Transactions" and
storage costs extend the statute of limitations period. *See* Am. Cmplt. ¶¶ 137-43, 214(d). They
do not. The Amended Complaint expressly pleads that the Conflicted Financing Transactions
were part of the alleged "cover up" and not part of the alleged scheme itself. *See id.* ¶ 82;
*Barsam*, 864 F. Supp. at 1450. Additionally, neither the Amended Complaint nor the RICO Case
Statement [Dkt. 20] pleads any fraudulent act connected to the Conflicted Financing
Transactions or storage costs, and thus these allegations cannot form the basis of predicate acts
or constitute the proximate or even factual cause of CPDC's alleged RICO injuries. *See Hecht v.*
*Commerce Clearing House, Inc.*, 897 F.2d 21, 23 (2d Cir. 1990). These injuries are also not
considered "new and independent" because they arise out of the same alleged scheme. *See*
*Oriska Ins. Co.*, 2010 WL 1028726, at *1-*2.

no justification for CPDC to have waited over five years to file suit.[16] Accordingly, CPDC's RICO claims are barred by the statute of limitations.

## 2. CPDC Has Not Pled A Domestic Injury

Following the Supreme Court's decision in *RJR Nabisco, Inc. v. European Community*, which held that the private right of action for civil RICO does not apply extraterritorially, a civil RICO plaintiff must "allege and prove a domestic injury to business or property and does not allow recovery for foreign injuries." 136 S. Ct. 2090, 2111 (2016). "Putative RICO violations are construed narrowly to adhere to the well-established presumption against extraterritoriality." *Yanchukov v. Finskiy*, No. 15-CV-8128, 2017 WL 3491965, at *5 (S.D.N.Y. Aug. 14, 2017). Since *RJR Nabisco*, courts in the Second Circuit have consistently held that determining the location of a RICO injury depends on where the plaintiff suffered the injury. *Id.* (collecting cases).

In the case of money or a financial interest, the plaintiff suffers the injury where the money is taken *from*, and not, as CPDC alleges, where the money ends up. *See Bascuñan v. Elsaca*, 874 F.3d 806, 818 (2d Cir. 2017) (stating property must be "located within the United States when it [is] stolen" in order to constitute domestic injury and "the fact that [defendants] transferred those stolen funds to (or through) the United States fails to transform an otherwise foreign injury into a domestic one"). Thus, the fact that funds were allegedly fraudulently transferred from PCSM's bank account in Taiwan to Praxair accounts in the United States does not create a domestic injury. *See id.*; Am. Cmplt. ¶¶ 173-74, 183-84, 192-93 (alleging predicate

---

[16] Additionally, the Amended Complaint fails to properly plead the elements of fraudulent concealment as part of its tolling argument with the requisite particularity. *See Eno Farms*, 2007 WL 3308016, at *7 (setting out three-element standard and noting Rule 9(b) pleading standard).

acts of wire fraud were transfer of money from PCSM's "bank accounts located in Taiwan" to Praxair accounts).

Further, the Amended Complaint identifies PCSM's alleged injury as having unnecessarily expended funds in connection with the silane transactions, and CPDC's alleged injury as the reduction in value of its 49% share of PCSM's profits that CPDC *would have received* from PCSM had PCSM not entered into the silane transactions with Praxair.  *See* Am. Cmplt. ¶ 214; *see also id.* ¶¶ 8, 59, 71.  To the extent PCSM was allegedly deprived of its funds and CPDC of its share in those funds, these deprivations occurred in Taiwan.  *See Elsevier Inc. v. Pierre Grossman, IBIS Corp.*, 12 Civ. 5121, 2017 WL 5135992, at *4 (S.D.N.Y. Nov. 2, 2017) (courts "focus on where the plaintiff felt the effects of the injury").[17]

CPDC attempts to manufacture a domestic injury by claiming that "[t]he amounts Praxair inequitably and unlawfully obtained from the JV Company and CPDC" are held by Praxair in the United States in a "Constructive Trust Res."  Am. Cmplt. ¶¶ 215-16.  That fictitious constructive trust is nothing more than Praxair's United States bank account and CPDC fails to allege a domestic injury because it ignores that the critical factor is where CPDC's financial stake *was taken from* and not where it goes.  *See Bascuñan*, 874 F.3d at 818; *Yanchukov*, 2017 WL 3491965, at *6 ("The fact that Finskiy conducted business in the United States . . .  and diverted the allegedly ill-gotten funds [from Russia and the British Virgin Islands] to the United States for his use is irrelevant to determining whether Plaintiffs suffered a domestic injury under the *Bascuñan* test.") (citations omitted); *cf. Newman v. Jewish Agency for Israel*, No. 16-CV-7593, 2017 WL 6628616, at *5 (S.D.N.Y. Dec. 28, 2017) (rejecting plaintiff's assertion of a domestic

---

[17] Similarly, the alleged Conflicting Financing Transactions do not create a domestic injury, as CPDC alleges the loans were made by the JV Company in Taiwan to Praxair Ireland.  Am. Cmplt. ¶¶137-138, 214(c).

injury based on defendants "located in the United States [having] made off with illicit proceeds derived from Plaintiff's assets" because "[i]t improperly turns the focus on the location of the Defendants, and not, as it should, on the location of the Plaintiff's property or financial interests").

CPDC's conclusory allegations that it is "a publicly traded company" and Defendants' actions have made CPDC "materially less attractive to potential and active investors in the United States," Am. Cmplt. ¶¶ 217, 219, also do not constitute domestic injury.  Courts have recognized that such speculative assertions of indirect reputational injury are inadequate.  "If reputational injury leading to loss of access to U.S. markets were sufficient to support a determination of domestic injury, the exception would swallow the rule:  any company could demonstrate domestic injury by alleging a diminished capacity to participate in the markets of the United States."  *Yanchukov*, 2017 WL 3491965, at *6 (finding allegation that plaintiff "has been impeded from accessing the United States capital markets, and has seen its business prospects in the United States severely diminished" did not plead a valid domestic injury).[18]

The Amended Complaint therefore does not allege a domestic injury and fails to state a claim under RICO.  Thus, the civil RICO causes of action should be dismissed.

### 3.     CPDC Fails To Allege A Distinct RICO Enterprise

To establish a civil RICO claim, a plaintiff must allege that the pattern of racketeering activity was conducted through a RICO enterprise, defined to "include[] any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals

---

[18] Similarly, CPDC's tenuous claims that it has "major," but unidentified, "customers" and "business partners" in the United States and owns unidentified property in the United States, Am. Cmplt. ¶ 220, that may somehow be impacted by the alleged RICO violations are insufficient to constitute a domestic injury.

associated in fact although not a legal entity."  18 U.S.C. § 1961(4); *At The Airport v. ISATA, LLC*, 438 F. Supp. 55, 61 (E.D.N.Y. 2006).  CPDC alleges an association-in-fact enterprise consisting of:  (i) Roby, Panikar, and Evans, each an employee of Praxair; (ii) Praxair (China) Investment Co. Ltd., Praxair Korea Company Limited, Praxair Electronics (Singapore), and Praxair Ireland, each of which is a wholly owned subsidiary of Praxair; and (iii) Joyce Chen, Yu Ling Shieh, and Mei Lu, each an executive at PCSM and who, as a result of Praxair's controlling interest in PCSM and Article 5.2 of the JV Agreement, operated at Praxair's direction.  *See* Am. Cmplt. ¶¶ 153-66.  This alleged association of individuals cannot constitute a RICO enterprise because it is not distinct.

The "distinctness" requirement of civil RICO provides that a RICO "person" and RICO "enterprise" must be distinct, "not simply the same 'person' referred to by a different name." *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013) (internal quotation marks omitted).  Similarly, "a corporate entity may not be both the RICO person and the RICO enterprise under section 1962(c)."  *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2d Cir. 1994) (citing *Bennett v. U.S. Trust Co.*, 770 F.2d 308, 315 (2d Cir. 1985)).  The "distinctness requirement may not be circumvented" by pleading a RICO enterprise that consists of nothing more than "a corporate defendant associated with its own employees or agents carrying on the regular affairs of the" corporate defendant's business.  *Riverwoods*, 30 F.3d at 344.  The distinctness requirement also prevents pleading a RICO enterprise consisting of the corporate defendants' subsidiaries and entities in which the corporate defendant has a controlling interest and those entity's employees.  *Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris, Inc.*, 113 F. Supp. 2d 345, 366 (E.D.N.Y. 2000) ("Subsidiaries and other affiliates of a parent corporation – alone or together with the parent corporation – do not constitute a RICO

enterprise distinct from the parent corporation."); *see also Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1063-64 (2d Cir. 1996).

Here, Roby, Panikar, and Evans – the RICO Defendants – are Praxair employees, and Praxair is the sole owner of the three subsidiaries, as well as the controlling owner of PCSM.  In the original Complaint, Plaintiff identified Praxair as a RICO Defendant, a member of the RICO Enterprise and "the mastermind of the RICO Enterprise's RICO activities."  Cmplt. ¶ 149.  In the Amended Complaint, Plaintiff has removed Praxair as a RICO defendant and no longer alleges that it was a member of the RICO enterprise, presumably in a misguided effort to circumvent the distinctiveness requirement.  Simply deciding not to include Praxair as a RICO defendant or list it as a member of the RICO enterprise does not change the fact that the alleged RICO defendants and the RICO enterprise are merely employees or agents of Praxair acting in the regular course of Praxair's business, within the scope of their authority and on Praxair's behalf.  *See, e.g.*, Am. Cmplt. ¶¶ 5-10, 153, 155, 160, 162, 164,173-174, 183-84, 192-93, 213.[19]

CPDC's re-pleading makes a distinction without a practical difference.  CPDC "cannot seriously contend that the actions of the [enterprise] were anything other than activities of [Praxair] employees carrying out the business of [Praxair]."  *Riverwoods*, 30 F.3d at 344. Indeed, absent working at the direction of and for the benefit of Praxair, there is no alleged common purpose of the enterprise, or structure or functioning as an independent continuing unit. *See Cruz*, 720 F.3d at 121; *Goodman v. Bremby*, No. 3:16-cv-00665, 2017 WL 4169427, at *9

---

[19] Chen, Shieh, and Lu, and the Praxair subsidiaries, also cannot be considered as part of the RICO Enterprise because there are insufficient specific allegations against them to plausibly allege they share a "common purpose" regarding the alleged scheme to defraud.  *See Cruz*, 720 F.3d at 120 ("[F]or an association of individuals to constitute an enterprise, the individuals must share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes.") (internal quotation marks omitted).

(D. Conn. Sept. 20, 2017); *see also Boyle v. United States*, 556 U.S. 938, 946-947 (2009).

"Where employees of a corporation associate together to commit a pattern of predicate acts in the course of their employment and on behalf of the corporation, the employees in association with the corporation do not form an enterprise distinct from the corporation." *Riverwoods*, 30 F.3d at 344; *see also Cruz*, 720 F.3d at 121. The result should be no different because CPDC attempts to circumvent the rule by removing Praxair in name only.

4.     **The Amended Complaint Fails To Plead Predicate Acts, Fails to Plead With Particularity, And Fails To Plead A Pattern Of Racketeering Activity**

To state a RICO claim based on a violation of § 1962(c), a plaintiff must allege that the defendant conducted the affairs of an enterprise "through a pattern of racketeering activity," 18 U.S.C. § 1962, which is defined to "require[] at least two [predicate] acts," 18 U.S.C. § 1961(5). A pattern of racketeering activity "must be established *as to each individual defendant*." *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001) (emphasis added).

Plaintiff alleges that Roby, Panikar, and Evans violated §1962(c) by committing predicate acts of mail or wire fraud. *See* Am. Cmplt. ¶¶ 169-99. To properly plead mail and wire fraud, a plaintiff must allege "(1) the existence of a scheme to defraud, (2) defendant's knowing or intentional participation in the scheme, and (3) the use of interstate mails or transmission facilities in furtherance of the scheme." *Plainville Elec. Prod. Co. v. Vulcan Adv. Mobile Power Sys., LLC*, 638 F. Supp. 2d 245, 251 (D. Conn. 2009). Mere allegations of wrongful conduct are insufficient to plead a scheme to defraud. Rather, the mail and wire fraud statutes "require[] some element of deception which may be satisfied where the mailing itself is misleading or where there is some other deception which the mailing serves." *Curtis & Assocs., P.C. v. Law Offices of David M. Bushman, Esq.*, 758 F. Supp. 2d 153, 178 (E.D.N.Y. 2010).

Because Plaintiff alleges predicate acts of fraud, it must satisfy Rule 9(b)'s heightened pleading standard, which requires that claims of fraud be plead "with particularity." Fed. R. Civ. P. 9(b); *see also Hoatson v. N.Y. Archdiocese*, No. 05 CIV 10467, 2007 WL 431098, at *4 (S.D.N.Y. Feb. 8, 2007) (dismissing §§ 1962(c) and (d) claims for failure to plead mail or wire fraud predicate acts with particularity). "[T]he overwhelming trend amongst the lower courts is to apply Rule 9(b) strictly in order to effect dismissal of civil RICO suits." *In re Sumitomo Copper Litig.*, 995 F. Supp. 451, 455 (S.D.N.Y. 1998) (internal quotation marks omitted); *see also Ackerman v. Nw. Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999) (the heightened pleading requirement is intended "to force the plaintiff to do more than his usual investigation before filing his complaint"). The Second Circuit has instructed that "these salutary purposes" be "rigorously enforced." *Ross v. Bolton*, 904 F.2d 819, 823 (2d Cir. 1990); *Casio Computer Co., Ltd. v. Sayo*, 98CV3772, 2000 WL 1877516, at *15 (S.D.N.Y. Oct. 13, 2000) ("All of the concerns that dictate that fraud be pleaded with particularity exist with even greater urgency in civil RICO actions.") (internal quotation marks omitted).

This Court has even more reason to critically examine the allegations in the Amended Complaint because Plaintiff has filed and proceeded through discovery and hearing in the ICC arbitration and multiple Taiwanese court proceedings, as well as filed unsuccessful criminal allegations with Taiwanese authorities. Yet, despite CPDC's access to all of this information, the allegations against the RICO defendants not only lack the specificity required by Rule 9(b), but also fail to plead an actual fraud.

### a. CPDC Fails To Sufficiently Plead Predicate Acts

CPDC alleges that Roby, Panikar, and Evans each committed the same predicate act of wire fraud by "upon information and belief, causing, ordering, and/or participating in the decision to cause the payment of money from the JV Company's bank accounts located in

37

Taiwan to the Praxair's bank accounts located in the United States for invoices tendered requiring payment for silane at an inflated price in September 2011." Am. Cmplt. ¶¶ 174 (Roby), 184 (Panikar), 193 (Evans). Then, CPDC simply asserts as to each defendant that, "[u]pon information and belief, these and numerous other predicate acts of wire fraud took place both preceding and following the aforementioned dates." *See* Am. Cmplt. ¶¶ 175, 185, 194. CPDC's claim is insufficient to state predicate acts of wire fraud.

First, there is only one actual predicate act of wire fraud even loosely identified. Second, there is no particularity pled as to the wire fraud. The Amended Complaint lacks any specific information regarding who did what; where, when, or how the transaction occurred; any communications, directions or misrepresentations; or even how much money was transferred. CPDC's allegations amount to pure speculation and cannot support a fraud claim. *See Greenwich Taxi, Inc. v. Uber Techs., Inc.*, 123 F. Supp. 3d 327, 340 (D. Conn. 2015) (dismissing civil RICO complaint where plaintiff failed to satisfy Rule 9(b) pleading requirement that "'[a]llegations of predicate . . . wire fraud acts should state the contents of the communications, who was involved, where and when they took place, and explain why they were fraudulent.'") (ellipses in original) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2d Cir. 1993)); *Tavakoli-Azar v. Crescent Mgmt., Inc.*, No. 97 Civ. 0696, 1999 WL 1052016, at *3 (S.D.N.Y. Nov. 19, 1999) (dismissing civil RICO claim for failure to make "specific assertions as to date, time, place, content, and context").[20]

---

[20] With respect to Evans, the Amended Complaint adds an allegation of a predicate act based on an alleged email to "his colleagues at Praxair and a number of Praxair subsidiaries in Asia to coordinate the Conflicted Unpackaged Silane Transactions." Am. Cmplt. ¶ 196. Yet, the allegation is similarly devoid of specifics. The only allegation adding any potential color to Evans' involvement is equally non-specific. *See id.* ¶ 163 ("Evans assists Praxair in setting the inflated prices at which it sells Unpackaged Silane to the JV Company as part of the Conflicted Unpackaged Silane Transactions.").

Third, "where multiple defendants are charged with fraud, the complaint must particularize each defendant's alleged participation in the fraud. Plaintiff must draw connections between the various defendants and the alleged acts of mail or wire fraud." *Casio*, 2000 WL 1877516, at *15. The Amended Complaint fails to do so.

Plaintiff's attempt to plead predicate acts also fails because each is based "upon information and belief." *See* Am. Cmplt. ¶¶ 173-75, 183-85, 192-94. "In general, Rule 9(b) pleadings cannot be based on information and belief." *Kershaw v. Nautica S.A. Ltd.*, 885 F. Supp. 617, 621 (S.D.N.Y. 1995) (internal quotation marks omitted). This rule is only relaxed "regarding matters that are distinctively within a party's knowledge," and even then, "each allegation made on information and belief must include a statement of facts upon which the belief is founded, including the source of the information and the reasons upon which the belief is founded." *Id.* (citations and internal quotation marks omitted). Here, information regarding the silane transactions is well within CPDC's knowledge, with discovery having long been completed in the ICC Arbitration. Moreover, the Amended Complaint includes neither sources of Plaintiff's information nor the facts upon which the beliefs are founded. For this additional reason, Plaintiff fails to allege predicate acts based upon the silane transactions.

### b. The Alleged Cover Up Acts Do Not Constitute Predicate Acts

CPDC alleges that Roby, Panikar, and Evans committed predicate acts of mail and wire fraud through letters and emails sent not in furtherance of a scheme to defraud, but rather as part of an alleged "cover up" of earlier-committed fraud. *See* Am. Cmplt. ¶¶ 177-81, 187-90, 197-98. The Amended Complaint makes clear that these efforts were undertaken in an effort to restrict "CPDC's right to manage and oversee" PCSM so that it could not investigate the silane transactions. *Id.* ¶ 106; *see also id.* at 18 (point heading) ("Defendants Engage In A Massive Conspiracy To Cover Up The Conflicted Silane Transactions."); *compare id.* ¶¶ 177-81, 188,

197 (listing mailings/wires in support of purported "cover up" predicate act, *with id.* ¶¶ 73-76, 107, 110, 114, 132 (describing same communications in alleging the "cover up")).

As discussed above, however, alleged "efforts at covering up the initial fraudulent act" are not themselves predicate acts. *See, e.g.*, *Rio Tinto PLC v. Vale*, No. 14-CIV-3042, 2015 WL 7769534, at *10 (S.D.N.Y. Nov. 20, 2015) (holding that alleged cover up could not satisfy requirement that plaintiff allege predicate acts); *Barsam*, 864 F. Supp. at 1450 (same); *Philadelphia Reserve Supply Co. v. Nowalk & Associates, Inc.*, CIV. A. 91-0449, 1992 WL 210590, at *6 (E.D. Pa. Aug. 25, 1992) ("Attempting to hide one's involvement in a scheme after it has been exposed in order to limit liability should not be confused with concealing the scheme itself in furtherance of its perpetration. While the [latter] may be a predicate act within the meaning of RICO the former is not."); *cf. Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 119 (2d Cir. 2013) ("Mailings that thus 'increase[] the probability that [the mailer] would be detected and apprehended' do not constitute mail fraud.") (quoting *United States v. Maze*, 414 U.S. 395, 403 (1974)).

Plaintiff attempts to counter this argument by adding to the Amended Complaint the perfunctory statement that "[t]hese actions were not solely attempts to cover up the initial fraudulent acts . . . , but also undertaken in order to facilitate continuation of the fraud to the detriment of the JV Company and CPDC." Am. Cmplt. ¶¶ 182, 191, 199. As addressed in Part II.C.1, *supra*, this bald contention is insufficient and irreconcilable with Plaintiff's allegation that the RICO defendants had disclosed the alleged fraud at a meeting in August 2012.

Moreover, none of the conduct alleged to have been committed by Roby, Evans, or Panikar constitutes fraud, nor pleads the elements of mail or wire fraud with the necessary particularity, and therefore cannot constitute predicate acts for purposes of the RICO statute.

The Amended Complaint does not allege any fraudulent or deceptive statements or omissions in these communications beyond mere labels and conclusions, nor is there any specified injury to PCSM (or, in turn, to CPDC) that allegedly resulted from the communications. While the parties clearly have had disagreement over the operation of the JV Company, such contract disputes do not amount to predicate acts of fraud under RICO.

Accordingly, the civil RICO claims against Roby, Panikar, and Evans should be dismissed for failure to sufficiently plead a RICO violation.

### c. CPDC Fails To Allege A Pattern And Continuity

In order to properly allege a pattern of RICO activity, CPDC must establish at least two predicate acts and either open-ended (*i.e.*, past criminal conduct coupled with a threat of future criminal conduct) or close-ended (*i.e.*, past criminal conduct extending over a substantial period of time) continuity through the alleged predicate acts. *See Dempsey v. Sanders*, 132 F. Supp. 2d 222, 228 (S.D.N.Y. 2001). As shown above, CPDC has not identified more than one predicate act. As to continuity, CPDC asserts both open- and closed-ended theories. *See* Am. Cmplt. ¶ 204. Neither is viable. CPDC cannot state a claim based on open-ended continuity for ongoing misconduct because CPDC has been aware of the alleged fraud and has taken action – in the ICC arbitration, the Taiwanse courts, and this Court – to stop it. *See Dempsey*, 132 F. Supp. 2d at 228 ("The alleged fraud involved was designed to extract money from the Plaintiff. Given this limited goal, the scheme was inherently terminable. It defies logic to presume that a threat of continued fraud upon the Plaintiff exists at the time of this lawsuit.").

While the only alleged predicate act specifically identified, though inadequately alleged, is the wire transaction purportedly made by PCSM in September 2011, even if the Amended Complaint is read remarkably broadly to somehow include the wire transaction that Praxair allegedly made in August 2011 in connection with the silane transaction, there can be no

continuity.[21] *See* Am. Cmplt. ¶¶ 173-4, 183-4, 192-3; Dkt. 20 ¶ 5. Plaintiff cannot establish a claim premised on close-ended continuity based on two acts that occurred in 2011 within two months because this time period is too short under the law. *See H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 242 (1989) ("Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement.").

Accordingly, the civil RICO claims based on section 1962(c) should be dismissed for failure to plead a pattern of activity.

### 5. CPDC Cannot Establish Proximate Cause

Regarding the RICO claims that CPDC brings directly, as opposed to derivatively on behalf of PCSM, CPDC must be able to establish that Defendants' conduct is the proximate cause of CPDC's alleged injury. *See Baisch v. Gallina,* 346 F.3d 366, 373 (2d Cir. 2003). The Second Circuit employs a two-part test for determining the existence of proximate cause. First, Plaintiff's alleged injury must result from Defendants' racketeering activity. *Id.* Second, Plaintiff must have suffered a direct injury that was foreseeable. *Id.* Although Plaintiff alleges it was the intended victim of the RICO defendants' actions, any direct injury impacted PCSM, not Plaintiff. The Amended Complaint alleges that Plaintiff's injury stems from the impact of the alleged RICO violations on the "value in the amount of CPDC's proportionate equity interest" in PCSM. Am. Cmplt. ¶ 214. This is exactly the type of attenuated injury that eliminates the proximate cause link. *See At The Airport*, 438 F. Supp. 2d at 63 (dismissing claim for lack of proximate cause where plaintiff's harm was "its inability to collect revenue and, more broadly, the diminution in the value of its investment in" the joint venture, and therefore derivative rather than direct); *see also Manson v. Stacescu*, 11 F.3d 1127, 1131-32 (2d. Cir. 1993) (stating no

---

[21] As Praxair is no longer a RICO Defendant, its act should not be considered as a predicate act of racketeering activity.

exception applied merely because co-shareholder was involved in the alleged wrongdoing because both shareholders' share value was impacted).

As CPDC cannot establish proximate cause, it cannot state a claim under civil RICO and the civil RICO claims brought directly by CPDC are subject to dismissal on this basis.

### 6. CPDC's Claim For Conspiracy Under Civil RICO Necessarily Fails Absent A Valid Civil RICO Claim

At the outset, the § 1962(d) RICO conspiracy claims fail because the substantive § 1962(c) RICO claims fail, as set forth above. *See, e.g.*, *Allen v. New World Coffee, Inc.*, No. 00-CV-2610, 2002 WL 432685, at *6 (S.D.N.Y. Mar. 19, 2002) (quoting *Discon*, 93 F.3d at 1064). Even if a § 1962(c) claim survives, the RICO conspiracy claim should nevertheless be dismissed under the intracorporate conspiracy doctrine, which posits that the officers, agents, and employees of a single corporate entity acting within the scope of their employment are legally incapable of conspiring together. *See, e.g.*, *Sathianathan v. Smith Barney, Inc.*, No. 04 CIV. 7122, 2006 WL 538152, at *23 (S.D.N.Y. Feb. 24, 2006), *adopted in relevant part*, 2007 WL 576097, at *5 (S.D.N.Y. Feb. 21, 2007). The Amended Complaint alleges that Praxair employees Roby, Panikar, and Evans conspired with one another while acting within the scope of their employment. That allegation violates the intracorporate conspiracy doctrine, and therefore warrants dismissal.

The Amended Complaint also fails to plead a RICO conspiracy beyond more than the blanket assertion that the RICO defendants "intentionally conspired and agreed to directly and indirectly conduct or participate" in the alleged racketeering activity. Am. Cmplt. ¶¶ 268, 274. Such conclusory allegations, however, are insufficient. *See, e.g.*, *Andreo v. Friedlander, Gaines, Cohen, Rosenthal & Rosenberg*, 660 F. Supp. 1362, 1372 (D. Conn. 1987); *see also Hecht*, 897 F.2d at 25 ("Because the core of a RICO civil conspiracy is an agreement to commit predicate

acts, a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement."); *Doe I v. State of Isr.*, 400 F. Supp. 2d 86, 119-20 (D.D.C. 2005) (dismissing RICO conspiracy claim because "[t]he complaint's broad and vague assertions simply recite legal conclusions and regurgitate the RICO elements without directing the Court to specific facts," including "specific facts" that support the allegation of a "subjective agreement").

**D.     CPDC's Remaining Causes Of Action Should Be Dismissed For Lack Of Supplemental Subject Matter Jurisdiction And Failure To State A Claim**

Subject matter jurisdiction in this action is predicated upon Plaintiff's civil RICO claims. In light of CPDC's failure to state a claim under RICO, the Court should decline to exercise supplemental jurisdiction over CPDC's remaining state and Taiwanese law claims. *See Merrill Lynch Ltd.*, 154 F.3d at 61. Further, each of the remaining causes of action fails to state a claim upon which relief can be granted and should be dismissed.

**1.     CPDC Does Not State A Valid Breach Of Fiduciary Duty Claim**

CPDC alleges a derivative claim under Articles 8, 23, and 214 of the Taiwan Company Act for breach of fiduciary duty against the Individual Defendants. This claim should be dismissed because CPDC fails to plead the claim with anything beyond generalized allegations, and makes no attempt to separate the actions taken by each of the Individual Defendants. *See* Am. Cmplt. ¶¶ 230, 232-33. Absent some specific allegations against each Individual Defendant demonstrating his or her separate breaches, the claim cannot stand. *See Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (affirming dismissal where plaintiff "lump[ed] all the defendants together in each claim and provid[ed] no factual basis to distinguish their conduct").

## 2. CPDC Fails To State Claims For Conversion, Civil Conspiracy To Commit Conversion, Or Aiding And Abetting Conversion

CPDC brings a claim for conversion against Praxair and asserts a claim for conspiracy to commit conversion against Praxair, Roby, Panikar, Evans, Chen, Shieh, and Lu, as well as aiding and abetting conversion against the same Defendants (minus Praxair). Am. Cmplt. ¶¶ 236-50. CPDC's claim for conversion fails a matter of Connecticut law, and the ancillary claims for conspiracy to commit and aiding and abetting conversion therefore fail as well.[22]

"Under Connecticut law, '[a]n action for conversion of funds may not be maintained to satisfy a mere obligation to pay money. . . . It must be shown that the money claimed, or its equivalent, at all times belonged to the plaintiff and that the defendant converted it to his own use." *Dalamagas v. Leonidas*, No. 16-cv-00638, 2017 WL 1086323, at * 4 (D. Conn. Mar. 22, 2017) (quoting *Macomber v. Travelers Prop. & Cas. Corp.*, 840 A.2d 180, 199-200 (Conn. 2002)). CPDC does not point to anything belonging to it that Praxair allegedly converted to its own use. CPDC's claim amounts to, at most, improperly decreasing PCSM's funds, which resulted in a decrease in the amount of PCSM profit distributed to CPDC. Claiming a decrease in a proportionate share of equity value does not state a claim for conversion. *See id.* at *5 (dismissing conversion claim where plaintiff was claiming half of a receivable owed to a

---

[22] CPDC appears to allege this claim under Connecticut state law. *See* Dkt. 20 at 23-24 (distinguishing conversion claim from its Taiwanese law-based claims). Taiwanese law, however, appears to apply after a choice-of-law analysis is performed. *See Carroll v. LeBoeuf, Lamb, Green & MacRae, L.L.P.*, 392 F. Supp. 2d 621, 628 (S.D.N.Y. 2005) ("A federal court exercising its supplemental jurisdiction over state law claims applies the choice of law rules of the forum state.") (citing *Rogers v. Grimaldi*, 875 F.2d 994, 1002 (2d Cir. 1989)); *W. Dermatology Consultants, P.C. v. VitalWorks, Inc.*, 153 A.3d 574, 584-86 (Conn. 2016) (applying "most significant relationship" test). If Taiwanese law applies, the conversion claim must be dismissed for failure to allege the existence of and elements for civil conversion under Taiwanese law.

company in which plaintiff was a 50% owner). Thus, the conversion claim should be dismissed for failure to state a claim.

Dismissal of the conversion count necessarily results in the dismissal of the conspiracy to commit and aiding and abetting conversion claims. *See Fink v. Magner*, 988 F. Supp. 70, 72 (D. Conn. 1997) ("A civil action of aiding and abetting cannot stand alone and depends upon the existence of a valid underlying cause of action."); *Larobina v. McDonald*, 876 A.2d 522, 531 (Conn. 2005) ("[A] claim of civil conspiracy must be joined with an allegation of a substantive tort."). Separately, for the reasons stated above, the civil conspiracy to commit conversion is barred by the intracorporate conspiracy doctrine. *See supra* Part II.C.6. Additionally, CPDC fails to sufficiently allege an agreement to conspire to commit conversion by the various Individual Defendants. Its conclusory claim that these Defendants "combined together" to agree to convert some portion of CPDC's equity value is deficient. *See Master-Halco, Inc. v. Scillia, Dowling & Natarelli, LLC*, 739 F. Supp. 2d 104, 107 (D. Conn. 2010) ("[M]ere association with a tortfeasor, or even knowledge of wrongdoing, without more, is insufficient to support a civil conspiracy claim.").

CPDC's claim for aiding and abetting conversion likewise fails. CPDC alleges nothing more than that the Individual Defendants, collectively, were "generally aware of their roles in carrying out the" conversion. Am. Cmplt. ¶ 247. That allegation is patently deficient. *See Smith*, 291 F.3d at 240; *see also Bigio v. Coca-Cola Co.*, 675 F.3d 163, 172 (2d Cir. 2012).

Thus, Counts II, III, and IV of the Amended Complaint should be dismissed for failure to state a claim.

### 3. CPDC Fails To State A Claim Under Article 369-4 Of The Taiwan Companies Act

CDPC alleges that Praxair and Angel violated Article 369-4 of the Taiwan Companies Act. This claim is baseless, misconstrues the scope of this statute, and should be dismissed. Article 369-4 of the Act only applies to companies organized and incorporated under the Act.

Article 369-4 states that a "controlling company" shall be liable for damages suffered as a result of causing its "subsidiary company" to conduct any business which is contrary to normal business practice or not profitable. *See* Am. Cmplt. ¶ 278. It further provides that "the responsible person of the controlling company" shall be liable with the controlling company if he or she "has caused the subsidiary company to conduct" the business at issue. Article 1 of the Taiwan Company Act defines "company" as a company organized and incorporated under the Act. Article 4 separately defines "foreign company" as a company organized and incorporated under foreign law. Article 369-2 defines a "controlling company" as a "company" that holds the majority of voting shares. Article 369-2 does not mention the term "foreign company" and there is nothing in the Act to suggest otherwise. In fact, the definition of "responsible person" highlights the distinction between a "company" and a "foreign company" under the Act. Article 2 in turn defines unlimited companies, unlimited companies with limited liability shareholders, limited companies, and companies limited by shares as the four classes of companies that can be formed under Taiwanese law.

Thus, a "responsible person" for purposes of Article 369-4 can only be considered one working for an entity organized and incorporated under Taiwanese law. Angel therefore cannot be a "responsible person" subject to liability under Article 369-4, and Praxair, as a "foreign company," cannot be a "controlling company" subject to liability under Article 369-4.

Regardless, the allegations against both Praxair and Angel epitomize the type of "conclusory allegations or legal conclusions masquerading as factual conclusions" that are prohibited by the pleading standards. *Smith*, 291 F.3d at 240; *see also Twombly*, 550 U.S. at 570.

Further, this and the following Article 184 and 185 count are the only causes of action asserted against Angel, Praxair's CEO. Notably, the two conclusory paragraphs contained in the Article 369-4 claim are *the only two paragraphs in the entire Amended Complaint that mention his name* (other than one paragraph to identify him and one paragraph to assert personal jurisdiction over him). There are simply no factual allegations in the Amended Complaint to even remotely support a claim that Angel had any knowledge or involvement in the matters alleged in this action. Defendants submit that CPDC named Angel without a valid basis and the Amended Complaint should be dismissed against him.

Accordingly, this claim – and the entire Amended Complaint as it pertains to Angel – should be dismissed with prejudice.

### 4. CPDC Fails To State A Claim Under Articles 184 And 185 Of The Taiwan Civil Code

CPDC alleges a claim under the Articles 184 and 185 of the Taiwan Civil Code against all Defendants. The sum total of the allegations consist of reciting the elements of the Articles and stating the Articles were violated. Clearly, that is insufficient, and the claim must be dismissed. *Smith*, 291 F.3d at 240; *see also Twombly*, 550 U.S. at 570. Accordingly, Count XI of the Amended Complaint should be dismissed for failure to state a claim for relief.

## CONCLUSION

For the foregoing reasons, Moving Defendants respectfully request that their Motion to Stay in Favor of Arbitration or, in the Alternative, Motion to Dismiss the Amended Complaint be granted.

Dated: June 18, 2018

BRACEWELL LLP

By:     */s/ Rachel B. Goldman*
Rachel B. Goldman (PHV09239)
David J. Ball (PHV09405)
Thomas F. Kokalas (PHV09406)
Mark R. Wulfe (PHV09407)
1251 Avenue of the Americas
New York, New York 10020
(212) 508-6100
rachel.goldman@bracewell.com
david.ball@bracewell.com
tom.kokalas@bracewell.com
mark.wulfe@bracewell.com

(Admitted as visiting attorneys)

-and-

PULLMAN & COMLEY LLC
David P. Atkins (CT04189)
850 Main Street
Bridgeport, CT 06601
(203) 330-2103
datkins@pullcom.com

*Attorneys for Praxair, Inc., Dr. Anne Roby, John Panikar, Vernon Thad Evans, James William Shaughnessy, William Pearce, Stephen Riddick, Tom Schulte, Mark J. Murphy, and Stephen Angel*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date, a copy of the foregoing was filed electronically.  Notice of this filing will be sent via e-mail to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.


Dated at New York, New York this 18th day of June, 2018.


*/s/ Rachel B. Goldman*
Rachel B. Goldman