# Exhibit 1

```
 1                  UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF CONNECTICUT
 2
     - - - - - - - - - - - - - - - - -x
 3                                    :
     CHINA PETROCHEMICAL DEVELOPMENT   : No. 3:17-cv-02005(SRU)
 4   CORPORATION,                     : 915 Lafayette Boulevard
                    Plaintiff,         : Bridgeport, Connecticut
 5                                    :
                  v.                  : September 4, 2018
 6                                    :
     PRAXAIR, INC., ET AL,            :
 7                  Defendants.        :
                                      :
 8   - - - - - - - - - - - - - - - - -x

 9


10
                       TELEPHONE CONFERENCE
11


12


13
     B E F O R E:
14


15        THE HONORABLE STEFAN R. UNDERHILL, U. S. D. J.

16


17


18


19


20


21


22


23            Sharon L. Masse, RMR, CRR
                Official Court Reporter
24              915 Lafayette Boulevard
             Bridgeport, Connecticut  06604
25                Tel: (860)937-4177
```

```
 1  A P P E A R A N C E S:

 2
        FOR THE PLAINTIFF:
 3
            ALSTON & BIRD, LLP
 4              90 Park Avenue, 12th Floor
                New York, New York  10016
 5          BY: KARL GEERCKEN, ESQ.
                ALEXANDER SETON LORENZO, ESQ.
 6

 7

 8      FOR THE DEFENDANT, PRAXAIR, INC.:

 9          BRACEWELL LLP
                1251 Avenue of the Americas, 49th Floor
10              New York, New York  10020
            BY: RACHEL B. GOLDMAN, ESQ.
11              DAVID J. BALL, ESQ.

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1        (Proceedings commenced at 1:08 p.m.)
2            THE COURT:  Stefan Underhill here.
3            MR. GLASSER:  Good afternoon, Your Honor.  Jim
4    Glasser is on the line.
5            THE COURT:  Thank you.
6            MR. GEERCKEN:  Good afternoon, Your Honor.  Karl
7    Geercken from Alston & Bird, also on the line.
8            MR. LORENZO:  One more from Alston & Bird, Your
9    Honor, Alex Lorenzo.
10           MS. GOLDMAN:  Your Honor, this is Rachel Goldman
11   from Bracewell on behalf of Praxair.  I'm joined by my
12   colleague, David Ball.  Good afternoon.
13           THE COURT:  Good afternoon.
14           All right.  We are on the record, and so it
15   would be helpful if each of you could identify yourselves
16   when you start speaking.
17           We've got, obviously, the motion to stay in
18   favor of arbitration, or, in the alternative, to dismiss
19   the amended complaint.  I have reviewed the papers, and I
20   think in light of the fact that I'm in trial and I have a
21   fairly limited time right now, I'm inclined to tell you my
22   thoughts and to have anybody who wishes to react to be
23   heard.
24           It appears to me that the parties to the joint
25   venture entered into an agreement that calls for

1    arbitration before the ICC, that the arbitration agreement
2    specifically provided the ICC and the rules of the ICC
3    would apply.  And it's my understanding that the rules of
4    that body call for questions regarding jurisdiction to be
5    decided by the arbitrable tribunal, which is Article 6(3)
6    of the ICC rules.  So it appears to me that the
7    arbitration agreement should be enforced and the matter
8    should be stayed and referred to arbitration.  But I'm
9    happy to hear anybody who wishes to be heard.
10            MR. GEERCKEN:  Good afternoon, Your Honor.  This
11   is Karl Geercken from Alston & Bird, and I'll be brief and
12   I'll update you.
13            Just yesterday, we received the ICC tribunal's
14   decision on the arbitration that was conducted in February
15   of this year.  The panel did not really -- found in favor
16   of claimant, CPDC, in connection with a dividend claim,
17   but found that there was insufficient evidence on some of
18   the other claims, did not really grant any of the
19   counterclaims of Praxair.  I wanted to get that out on the
20   table so you were aware of that, Your Honor, at the
21   outset.  So that is something that I think both sets of
22   counsel will probably look at a little bit more carefully.
23            With respect to the issue as to whether or not
24   the action ought be stayed, as we set out in our response
25   to the motion to dismiss and/or stay, we think the claims

1   and the parties are different, and you have some
2   nonsignatories that are the primary defendants in this
3   action, and those are the director officers of the joint
4   venture entity that's also referred to by the initials
5   PCSM.  They did not sign the agreement.  Although some or
6   all of them were employed by Praxair, they were acting on
7   behalf of the joint venture entity, which is also not a
8   signatory to the particular agreement, the joint venture
9   agreement.
10               This is consistent -- there are tort claims that
11  are being asserted here against these defendants and
12  against Praxair, there's a couple claims for conversion,
13  and some Taiwanese law claims against Praxair as well.
14  Praxair has argued -- we think quite correctly -- in the
15  ICC arbitration that any tort claims were not the subject
16  of the arbitral proceedings, and they made arguments to
17  that effect and made clear that they believed, in that
18  proceeding, that there's no basis to arbitrate those
19  claims as they are not part of the arbitral provision in
20  the joint venture agreement.
21               So we think that while there are some facts that
22  are similar to all -- to the claims that were asserted,
23  the claims themselves and the parties themselves do not
24  relate to -- sufficiently relate to the arbitration
25  provision or the joint venture agreement such that that

1   should be -- the dispute here ought be arbitrated.

2              THE COURT:  Okay.  Well, the amended complaint
3   has dozens of references to the joint venture agreement,
4   and specifically to the minority shareholder provisions of
5   that agreement and how those provisions have been put at
6   risk through the conduct complained of.  It seems to me
7   that the phrase "arising out of or relating to the joint
8   venture agreement" is fairly clearly met with respect to
9   the parties to the arbitration agreement.

10             With respect to the other parties, I'm happy to
11  hear more from you; but we're going to have, I think, a
12  problem with any civil RICO claim against those parties
13  because there's no allegation of any domestic injury here.
14  The theory seems to be that the defendants obtained,
15  wrongly obtained in Taiwan, monies or property belonging
16  to the plaintiff; brought that money or property to the
17  United States, where it remains; and because it remains
18  here, the theory is that the plaintiff is being harmed
19  domestically.

20             I am extremely skeptical of that, that apparent
21  argument.  Maybe that's not your argument, but that's the
22  one that appears to arise from your briefing.  So maybe we
23  could start with that.

24             The other problem, I think, is the torts, again,
25  because the amended complaint makes clear that the

1 plaintiff was in Taiwan, its bank accounts were in Taiwan,
2 it was harmed in Taiwan, it's going to be -- I mean, even
3 assuming that you can overcome the long-arm statute, which
4 seems unlikely, I think you're going to have a forum non
5 conveniens problem.
6 　　　　　So my hope, and maybe I'm mistaken, but my hope
7 would be that an arbitration of the claim between the
8 joint venture parties, pursuant to their agreement, might
9 go a long way toward resolving the matter.
10 　　　　　MR. GEERCKEN:  Thank you, Your Honor, and of
11 course we'll consider that, and it's good to get your
12 guidance on this.
13 　　　　　If I could speak just a little bit to the
14 domestic injury issue.  I recognize your concern there,
15 although we believe that the case is very similar to the
16 *Bascunan* case in which funds that were held in trust in
17 the United States, where it was held that the
18 misappropriation of funds that were held in trust in a New
19 York account in that case, that was sufficient to state
20 the domestic injury.
21 　　　　　Now, in that case I will acknowledge that there
22 was an actual trust account set up in the United States.
23 But we think the logic should still prevail, given the
24 jurisprudence on the imposition of constructive trust
25 under similar situations where you have wrongful conduct

1  of the nature that were alleged here and breach of the
2  fiduciary duty in that a constructive trust would be
3  imposed upon -- imposed over those funds.  So as soon as
4  they were brought into the United States, they become the
5  trust res over which a constructive trust should be
6  imposed according to the law, imposed by law.
7             THE COURT:  But the case you're citing asks two
8  questions, and this is directly from your complaint:  Who
9  became poorer, and where did they become poorer?
10            The complainant here became poorer in Taiwan.
11 It can't be that the situs of the injury is wherever the
12 wrongdoer takes the proceeds of the wrongdoing.  If
13 someone breaks into my house and takes my property and
14 then drives to Michigan, I have been harmed here, not in
15 Michigan, even though my property may be there.
16            The theory of the constructive trust that you're
17 trying to construct here is way too expansive.  I can't --
18            MR. GEERCKEN:  Your Honor -- forgive me.
19            THE COURT:  Go ahead.
20            MR. GEERCKEN:  No, I think there was discussion
21 about this as well in the *Bascunan* case, and I think the
22 Court there acknowledged that there were similar issues
23 but indeed found that because the funds were depleted in
24 New York, notwithstanding the party being located outside
25 of New York, that there was sufficient domestic injury

1  alleged to sustain a RICO count based on the depletion of
2  the trust accounts in New York.  And that's the gist of
3  our argument here, is that that same conduct that took
4  place here, where sums were held in trust here, and on
5  information and belief depleted, that that would also,
6  like in *Bascunan*, satisfy the domestic injury problem.
7           THE COURT:  But the held in trust is based
8  completely on the assumption that monies stolen in Taiwan
9  and brought to the United States create a trust in the
10 United States.  The tort, if any, occurred when the money
11 was stolen.  The fact that the thief, if you will, spent
12 some of the money doesn't mean that the situs of the
13 injury is wherever the thief spent the money.  We would
14 have the world's problems tried in the United States
15 courts if that theory were permissible.
16          MR. GEERCKEN:  Well, I think under the
17 jurisprudence in Connecticut -- and, again, I can just
18 fall back on the *Bascunan* case where there was a
19 discussion of the situs of the injury, and the Court did
20 come down and say that under the circumstances even though
21 the litigant was outside of the jurisdiction, the
22 depletion of assets there suffice.  But I understand your
23 point, Your Honor.
24          THE COURT:  Okay.  So my bottom line is it
25 appears to me that the parties to the joint venture

1  agreement should be directed to the arbitrators to
2  determine whether some or all of the claims between them
3  are arbitrable.  And I think it makes good judicial sense
4  in terms of economy to stay the remainder of the case
5  pending a determination of whether the arbitration is
6  going to go forward.  I'm happy at any point to hear that
7  it makes more sense to go forward on the motion to
8  dismiss, but I hope we can hold that for another day.
9             MR. GEERCKEN:  Thank you, Your Honor.
10            MS. GOLDMAN:  Your Honor, this is Rachel Goldman
11 on behalf of Praxair.  We agree with Your Honor's -- your
12 statements and positions on these issues.
13            We do have a reply brief that is supposed to be
14 due in 45 days.  We'll obviously take guidance from the
15 Court on that, if necessary.
16            THE COURT:  Reply brief on these issues?
17            MS. GOLDMAN:  Yes, Your Honor.  As part of the
18 original stipulation reached with plaintiff, there was a
19 reply brief built into the briefing schedule.  If the
20 Court is inclined to rule as the Court has indicated
21 today, it seems a reply brief would be moot, and we
22 wouldn't want to waste anyone's time.  So I just wanted to
23 raise that for scheduling purposes.
24            THE COURT:  Yes.  I think it's unnecessary to
25 file a reply brief.

1               MS. GOLDMAN:  Thank you, Your Honor.

2               THE COURT:  All right.  Well, unless anybody

3    wants to be heard further, I'm going to grant the motion

4    to stay, direct the joint venture parties to the

5    arbitration panel, assuming it's the same panel, or if

6    not, to a new panel in Taiwan under the ICC rules, and

7    we'll await the outcome of their determination.

8               I'll hold the motion to dismiss for now, and in

9    the event that we get a request to proceed vis-a-vis the

10   other parties, I'm happy to take up the motion to dismiss

11   after -- at that point, after a reply brief is filed.  But

12   I don't see any point in going forward with that unless,

13   frankly, unless the plaintiffs want to press the Court to

14   proceed on the motion to dismiss.

15              (Pause)

16              Hearing nothing --

17              MR. GEERCKEN:  We're not making that request

18   right now, Your Honor.

19              THE COURT:  Very good.  Obviously, you can do

20   that whenever you'd like.

21              All right.  I do not intend to write anything

22   regarding the motion to stay.  If anybody wants me to try

23   to more clearly articulate my reasoning for granting the

24   stay and sending the parties to the arbitrators, let me

25   know now, please.

```
 1                  (No response.)
 2                  THE COURT:  All right.  Thank you all.  Best of
 3     luck.  Take care.
 4                  MR. GEERCKEN:  Thank you, Your Honor.
 5                  MS. GOLDMAN:  Thank you, Your Honor.
 6                  (Proceedings adjourned at 1:25 p.m.)
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

C E R T I F I C A T E

No. 3:17-cv-02005-sru
China Petrochemical Development Corporation v. Praxair, Inc., et al

    I, Sharon L. Masse, RMR, CRR, Official Court Reporter for the United States District Court for the District of Connecticut, do hereby certify that the foregoing pages are a true and accurate transcription of my shorthand notes taken in the aforementioned matter to the best of my skill and ability.

September 9, 2018

/S/ Sharon L. Masse
Sharon L. Masse, RMR, CRR
Official Court Reporter
915 Lafayette Boulevard
Bridgeport, Connecticut  06604
Tel: (860)937-4177